## CITY OF ATLANTA *et al. v.* STEIN.

A municipal corporation, though not required by its charter to let contracts for public work to the lowest bidders, and though clothed as to such matters with the broadest discretionary powers, has no authority to adopt an ordinance prescribing that all work of a designated kind shall be given exclusively to persons of a specified class. Such an ordinance is ultra vires and illegal, because it tends to encourage monopoly and defeat competition, and all contracts made in pursuance thereof are void.

Argued July 25, — Decided August 9, 1900.

Injunction. Before Judge Lumpkin. Fulton superior court. June 8, 1900.

*J. A. Anderson, J. T. Pendleton, Lumpkin & Colquitt,* and *C. T. Ladson,* for plaintiffs in error.
*Charles W. Smith* and *Arminius Wright,* contra.

LUMPKIN, P. J. The mayor and general council of the City of Atlanta adopted the following ordinance: "An ordinance requiring the union label of the Allied Printing Trades Council on all city printing. Section 1. Be it ordained by the mayor and general council, that all printing, of whatever character, used for or by the City of Atlanta, shall bear the Allied Printing Trades Council union label of Atlanta, Georgia, as registered with the secretary of State. Section 2. Each and every city official, when advertising for bids for printed matter, shall specifically state in said advertisement and shall notify bidders that all bids shall be made in accord-

ance with this ordinance. Section 3. All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed." This ordinance went into effect March 9, 1900. In obedience to its requirements, the city comptroller made a contract with the Pease Printing Company, a member of the union, to do certain printing at an agreed price. Stein, a citizen and taxpayer of Atlanta, filed an equitable petition to enjoin the municipal authorities and the Pease Company from carrying this contract into effect, and the former from further enforcing the ordinance mentioned. At the hearing it appeared that there were in the city four union and fifteen non-union printing establishments, and that the comptroller, solely because of this ordinance, refused to entertain bids for printing from the proprietors of any of the latter. The evidence was conflicting as to the value of the work embraced in the contract with the Pease Company, but the preponderance of it was to the effect that it was worth less than the price to be paid that company, and that the city, if the non-union printers had been allowed to compete for it, could have made a more advantageous contract. The charter of the city does not require the mayor and general council to let contracts for public work to the lowest bidders, but, under its provisions, the municipal authorities are, as to such matters, invested with a wide discretion. The injunction was granted, and the defendants excepted. As the contract was made strictly in pursuance of the ordinance, the validity of the former depends upon that of the latter. If, therefore, the ordinance was void and it was right to enjoin the further enforcement of it, there was certainly no error in preventing by injunction the consummation of the contract. The fall of the ordinance necessarily carries with it the agreement, which had no other source of vitality. In our judgment, the ordinance was void and the injunction was properly granted. It can not be seriously denied that the ordinance tended to defeat competition and encourage monopoly. Indeed, the evidence introduced before the trial judge fully warranted a finding that such was not only the tendency, but the actual effect, of the ordinance. It is not within the power of municipal authorities to enact legislation of this kind. On the contrary, with all respect to the mem-

bers of the city council, we are constrained to hold that so doing is an unwarranted act which calls for judicial interference.

We can not agree with the able and distinguished counsel for the city that "The ordinance attacked and enjoined below amounted only to a direction by the mayor and general council to the ministerial officers of the city to place the orders for public printing with printers using a union label." This ordinance is something more than a mere "direction." It has the form, and was intended to have the effect, of *law*; and, if valid, would, until repealed, bind the members of council as much as it would the subordinate officials of the city. These members could not, with propriety, disregard it so long as they permitted it to stand upon the municipal statute book, and the mere power to repeal it certainly did not prevent its operation on all concerned. If, in the absence of such an ordinance, the contract in question had been let to the Pease Company, it could not properly be said that the making of it was an abuse of discretion, on the sole ground that the price of the work was too high. It would require an extreme case to justify the courts in setting aside a municipal contract on such a ground, when made under a charter like that of Atlanta. With respect to agreeing on prices, securing good work, prompt service, etc., etc., the municipal discretion must and should be allowed a wide scope; and, when exercised, the courts should be exceedingly slow and reluctant to interfere. Certainly, they should never undertake to substitute their judgment, in matters of judgment, for that of the city's governing authorities. This court, in *Semmes* v. *Columbus*, 19 *Ga.* 471, held, that "A body corporate is not answerable for an *erroneous* exercise of a discretion, though the consequences be injurious," and that "Inadequacy of price, unless so great as, of itself, to be evidence of fraud, is not a sufficient ground for impeaching" a contract for the sale of property belonging to a city. In *Wells* v. *Atlanta*, 43 *Ga.* 67, it was decided that where a municipal corporation is acting within the scope of its powers, a court will not "interfere to restrain or control its action on the ground that the same is unwise or extravagant," and that "To sustain such interference, it must appear either that the act is *ultra vires* or fraudulent or corrupt." Again, in *Danielly* v. *Cabaniss*, 52 *Ga.* 212, it was ruled that

"When a town council is authorized by law to do a particular act at its discretion, the courts will not control this discretion and inquire into the propriety, economy, and general wisdom of the undertaking or into the details of the manner adopted to carry the project into execution." The case of *Mayor* v. *Eldridge*, 64 *Ga.* 524, is on the same line; and there are many others in which this court has made decisions of similar import. The doctrine of all these cases, viz., that, as a general rule, there should be no judicial interference with the exercise by municipal bodies of the discretion with which they are by law invested, is sound and well recognized, but this rule is not absolutely without exception. The whole subject was given thorough consideration in the case of *Atlanta* v. *Holliday*, 96 *Ga.* 546, in which, after stating that, "Under the charter of the City of Atlanta, the discretion of its municipal authorities, within the sphere of their powers, is very broad, and this discretion is to be exercised according to the judgment of the corporate authorities as to the necessity or expediency of any given measure," it was held that, "where these authorities are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen. In a case where it clearly appears that a threatened act on the part of the municipal authorities will result in such oppression, a court of equity may interfere to prevent the wrong." The vice of the ordinance now under consideration is that it cuts off the power to fully and freely exercise that very discretion which the public good requires the mayor and general council to exercise in making contracts. It effectually ties their hands and prevents their availing themselves of opportunities to make advantageous agreements in behalf of the city, which it is idle to say would not be presented were this ordinance out of the way. We can not, therefore, escape the conclusion that in adopting this ordinance the mayor and general council exceeded their authority.

In 1 Spelling, Extraord. Relief, § 718, it is said : "Where no conditions or restrictions are imposed upon municipal officers in the matter of letting contracts, they are not obliged to let the work to the lowest bidder, and can not be enjoined for

a refusal to do so, unless guilty of fraud.   They may exercise
an unlimited discretion so long as they are not guilty of gross
abuse of discretion and do not pervert their powers to such an
extent as to amount to a fraudulent misappropriation of the
public funds."   It is interesting, in this connection, to notice
the case of Avery v. Job, 25 Or. 512, in which was ruled, that
"Although the purchase or erection of certain public improve-
ments may have been by the municipal charter confided to the
judgment and discretion of the city council, yet equity will, at
the suit of taxpayers, restrain the council from proceeding in
the matter when it is not exercising its discretion but is arbi-
trarily wasting the public funds, since such conduct is a gross
and manifest abuse of power amounting to a legal fraud on the
taxpayers."   Here, then, we have most respectable authority
for the proposition that a municipal act which amounts to a
refusal to exercise discretion and which must result in an ar-
bitrary waste of the public funds "is a gross and manifest abuse
of power amounting to a legal fraud on the taxpayers."   Is
not such waste sure to occur, when, out of nineteen printing
concerns in Atlanta, only four are allowed to compete for the
city's work, and would not a combination of these four (which
could most probably be effected without much difficulty) cer-
tainly create a monopoly?   If the four should combine, there
would be no competition whatever.   It was urged in the argu-
ment that, if such a thing should occur, the ordinance could
and would be speedily repealed.   To this we reply that the
combination might be made without the knowledge of the mu-
nicipal authorities; but aside from this, they ought at all times
to be in a position to meet such an emergency without being
compelled to resort to further legislation, and further, whether
such a combination is to be anticipated or not, they have no
more right to restrict competition than to defeat it altogether.
The case of Adams v. Brenan, 177 Ill. 194, is in many respects
similar to the one in hand.   It was there held, that " A board
of education has no power to agree with the representatives of
labor organizations to insert in all its contracts for work upon
school buildings a provision that none but union men should
be employed in such work or placed upon its pay-rolls."   We
make two pertinent extracts from the opinion of Mr. Justice

Cartwright: "It is plain that the rule adopted by the board and included in this contract is a discrimination between different classes of citizens, and of such a nature as to restrict competition and to increase the cost of work.    It is unquestionable that if the legislature should enact a statute containing the same provision as this contract in regard to any work to be done for boards of education, or if they should by a statute undertake to require this board, as the agency of the State in the management of school affairs in the City of Chicago, to adopt such a rule or insert such a clause in its contracts, or should undertake to authorize it to do so, the provision would be absolutely null and void as in conflict with the constitution of the State.    If such a restriction were sought to be enforced by any law of the State, it would constitute an infringement upon the constitutional rights of citizens, so that the State in its sovereign capacity, through its legislature, could not enact such a provision."    (Pages 199–200.)    "There is another ground upon which complainant has an undoubted right to maintain the bill, and that is, that the contract tends to create a monopoly and to restrict competition in bidding for work. The board of education may stipulate for the quality of material to be furnished and the degree of skill required in workmanship, but a provision that the work shall only be done by certain persons or classes of persons, members of certain societies, necessarily creates a monopoly in their favor.    The effect of the provision is to lessen competition by preventing contractors from employing any except certain persons and by excluding therefrom all others engaged in the same work, and such a provision is illegal and void.    A taxpayer may resist an attempted appropriation of his money in execution of such a contract."    (Pages 201–202.)

. In Holden *v.* Alton, 179 Ill. 318, which was a case of identically the same kind as ours, except that there the city charter required the contracts to be let to the lowest bidders, it was decided that an ordinance like the one now under review was "illegal, as tending to create a monopoly and impose an additional burden on taxpayers." · While, of course, the provision as to letting contracts to the lowest bidders was a matter of consequence, an examination of the opinion which was delivered by

the same justice from whom we quoted above will leave little room for doubting that the decision would and ought to have been the same even in the absence of such a provision.   There are, besides the foregoing, numerous other authorities which support our conclusion in the present case.   We cite, as more or less in point, the following: Beach on Monop. & Ind. Trusts, § 125 ; 2 Beach on Injunctions, § 1299 ; City of Chicago v. Rumpff, 45 Ill. 90 ; Littler v. Jayne, 124 Id. 123 ; Loan Assn. v. Topeka, 20 Wall. 655 ; Cin. St. R. Co. v. Smith, 29 Ohio St. 292 ; Van Reipen v. Jersey City, 58 N. J. 262 ; Oakley v. Atlantic City (N. J.), 44 Atl. Rep. 651 ; Winkler v. Summers, 5 N. Y. Sup. 723.   Most of the authorities cited in this opinion are also pertinent upon the proposition that in a case like the present the taxpayer has the right to invoke an injunction.   Our case of *Peeples* v. *Byrd*, 98 *Ga.* 688, relied on by counsel for the plaintiffs in error, is in entire accord with what we now decide. There, the Supreme Court reporter was in fact exercising a discretion.   Here, the corporate authorities sought to put themselves in a place where they could not do so at all, or else within very narrow limits.

*Judgment affirmed.    All the Justices concurring.*