# LINDSLEY v. NATURAL CARBONIC GAS COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 260. Argued January 3, 4, 1911.—Decided March 13, 1911.

Courts of the United States must accept the construction put upon a state statute by the highest court of the State; and, in determining the constitutionality of a state statute, this court is not concerned with provisions thereof which the highest court of the State has declared invalid.

It is within the power of the State, consistently with due process of law, to prohibit the owner of the surface by pumping on his own land, water, gas and oil, to deplete the subterranean supply common to him and other owners to their injury; and so held that the statute of New York protecting mineral springs is not, as the same has been construed by the Court of Appeals of that State, unconstitutional as depriving owners of their property without due process of law. *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190.

This court cannot give effect to statements not supported by the record and contrary to the situation as it appears to have been regarded by the highest court of the State, and which is not inconsistent with the allegations of the bill.

If the facts alleged by one contesting the constitutionality of a state statute take him out of the operation of the statute, as construed by the highest court of the State, he is not harmed by the statute and cannot draw in question or test its validity.

The equal protection clause of the Fourteenth Amendment admits of a wide exercise of discretion and only avoids a classification which is purely arbitrary being without reasonable basis; nor does a classification having some reasonable basis offend because not made with mathematical nicety or resulting in some inequality.

This court will assume the existence at the time the statute was enacted of any state of facts that can reasonably be conceived and which will support a classification in a state statute attacked as denying equal protection of the law.

The burden of showing that a classification in a state statute denies

equal protection of the law as not resting on a reasonable basis is on the party assailing it.

A police statute may be confined to the occasion for its existence. If there is a substantial difference in point of harmful results between various methods of pumping gas and mineral water, that difference justifies a classification, and the burden is on the attacking party to prove the classification unreasonable; and so *held* that the classification in the New York Mineral Springs Act does not appear to be arbitrary but to rest on a reasonable basis.

Where it is not an arbitrary discrimination, and there is a rational connection between two facts, a State may make evidence of one of such facts *prima facie* evidence of the other, so long as the right to make a full defense is not cut off, *Mobile &c. R. R. Co.* v. *Turnipseed,* 219 U. S. 35; and so *held* that the New York Mineral Springs Act is not rendered unconstitutional as denying equal protection of the law by the ruling of the Court of Appeals, read into the statute, that proof of certain designated facts amounts to *prima facie* proof establishing a reasonable presumption, but one that can be overcome, that other acts of defendants fall within the prohibition of the statute.

170 Fed. Rep. 1023, affirmed.

By a bill in equity exhibited in the Circuit Court the appellant, as owner and holder of capital stock and bonds of the Natural Carbonic Gas Company, sought a decree enjoining that company from obeying, and the other defendants from enforcing, a statute of the State of New York, approved May 20, 1908, entitled "An act for the protection of the natural mineral springs of the State and to prevent waste and impairment of its natural mineral waters," and containing, among others, this provision: "Pumping, or otherwise drawing by artificial appliance, from any well made by boring or drilling into the rock, that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas, or pumping, or by any artificial contrivance whatsoever in any manner producing an unnatural flow of carbonic acid gas issuing from or contained in any well made by boring or drilling into the rock, for the purpose of ex-

tracting, collecting, compressing, liquefying or vending such gas as a commodity otherwise than in connection with the mineral water and the other mineral ingredients with which it was associated, is hereby declared to be unlawful." Laws 1908, vol. 2, 1221, ch. 429.

In addition to what properly may be passed without special mention the bill alleges that the gas company owns twenty-one acres of land in Saratoga Springs, New York, which contain mineral waters of the class specified in the statute; that these waters are percolating waters, not naturally flowing to or upon the surface, and can be reached and lifted to the surface only by means of pumps or other artificial appliances; that the gas company is engaged in collecting natural carbonic acid gas from these waters and in compressing and selling the gas as a separate commodity; that this business has come to be both large and lucrative, and as a necessary incident to its successful prosecution the gas company has sunk upon its land wells of great depth, made by boring or drilling into the underlying rock, and has fitted these wells with tubing, seals and pumps, whereby it lifts the waters and the gas contained therein to the surface; that these pumps do not exercise any force of compulsion upon waters in or under adjoining lands, but lift to the surface only such waters as flow by reason of the laws of nature into the wells; that when the waters are lifted to the surface the excess of carbonic acid gas therein naturally escapes and is caught and compressed preparatory to its sale, none thereof being wasted and no process being employed to increase the natural separation of the excess of gas from the waters; and that many other land owners in Saratoga Springs have like wells which are operated in a like way with a like purpose.

It also is alleged that the gas company bottles and sells for drinking purposes and for use by invalids and others all of the mineral waters pumped from its wells "for

which there is any market or demand," but there is no allegation of the extent of this market or demand, and it was conceded in argument that a large proportion of the waters pumped from the company's wells is not used, but is suffered to run to waste.

In terms the bill predicates the right to the relief sought upon the claim that the state statute deprives the appellant and others of property without due process of law and denies to them the equal protection of the laws, and therefore is violative of the Fourteenth Amendment to the Constitution of the United States.

In the Circuit Court the defendants other than the gas company demurred to the bill, the demurrers were sustained (170 Fed. Rep. 1023), and a decree dismissing the bill was entered, whereupon this appeal was prayed and allowed.

*Mr. Guthrie B. Plante* and *Mr. Edgar T. Brackett,* with whom *Mr. Robert C. Morris* was on the brief, for appellant:

The statute violates the Fourteenth Amendment in that it deprives the gas company without due process of law of liberty and property—meaning the profitable and free use of property by its owner. *Chicago Ry. Co.* v. *Minnesota,* 134 U. S. 418; *Smyth* v. *Ames,* 169 U. S. 466, 523; *Munn* v. *Illinois,* 94 U. S. 113; *In re Jacobs,* 98 N. Y. 98; *People* v. *Otis,* 90 N. Y. 48, 52.

At common law the owner of land has a property right in all water and gases that percolate or flow through the soil or rocks, that he is able to reduce to possession, and to use the same for his own purposes at his free will and pleasure. *Chasemore* v. *Richards,* 7 H. L. Cas. 349; *Bradford* v. *Pickles,* Law Reporter, 1895, App. Cas. 587; and see *Acton* v. *Blundell,* 12 Mees. & Wels. 324, which was early followed in this country; *Chatfield* v. *Wilson,* 28 Vermont, 49; *Roath* v. *Driscoll,* 20 Connecticut, 533; *Pix-*

ley v. *Clark*, 35 N. Y. 520; *Delhi* v. *Youmans*, 45 N. Y. 362; *Bloodgood* v. *Ayres*, 108 N. Y. 400, 405; *Huber* v. *Merkel*, 117 Wisconsin, 368; *United States* v. *Alexander*, 148 U. S. 186.

For recent cases in New York, see *Smith* v. *Brooklyn*, 18 App. Div. 340; *S. C.*, 32 App. Div. 257; aff'd 160 N. Y. 357; *Merrick Water Co.* v. *Brooklyn*, 32 App. Div. 454; aff'd 160 N. Y. 657; *Forbell* v. *New York*, 47 App. Div. 37; aff'd 164 N. Y. 522.

The owner of lands owns the percolating water in the soil by the same title as that on which he holds the land. He may make such use of the percolating water as he chooses, and is not liable for the interception of percolating water, even though it cuts off the supply of the adjoining owner, unless one owner uses his lands solely to obtain water from adjoining premises for purposes of transportation and sale. The same rule has been held to apply to petroleum, oil and natural gas. *Brown* v. *Spilman*, 155 U. S. 665, 669; *Brown* v. *Vandergrift*, 80 Pa. St. 142, 147; *Westmoreland Nat. Gas Co.'s Appeal*, 25 Weekly Notes of Cases (Pa.), 103; *Kansas Natural Gas Co.* v. *Haskell*, 172 Fed. Rep. 545; *Westmoreland Nat. Gas Co.* v. *DeWitt*, 130 Pa. St. 235, 249.

If an adjoining or even a distant owner drills his own land and taps your gas so that it comes into his well and under his control it is no longer yours, but his. See also *People's Gas Co.* v. *Tyner*, 131 Indiana, 277; *Simpson* v. *Pittsburgh Plate Glass Co.*, 28 Ind. App. 352; *Commonwealth* v. *Trent*, 117 Kentucky, 46; *Acme Oil Co.* v. *Williams*, 140 California, 681; *Preston* v. *White*, 57 W. Va. 284; *Lanyon Zinc Co.* v. *Freeman*, 68 Kansas, 696; *Federal Oil Co.* v. *Western Oil Co.*, 121 Fed. Rep. 675; *Brewster* v. *Lanyon Zinc Co.*, 140 Fed. Rep. 801, 809; *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190, 208.

The right to percolating waters is a vested one. *Twining* v. *New Jersey*, 211 U. S. 78, 100; *Missouri Pacific Ry.*

*Co.* v. *Humes,* 115 U. S. 512, 519; *Hurtado* v. *California,* 110 U. S. 516; *Scott* v. *McNeal,* 154 U. S. 34, 46, 50; *Smyth* v. *Ames,* 169 U. S. 466, 522.

Although the statute in question does not take the property of the defendant and appropriate it to a public use, it does effectually deprive it of the beneficial use and enjoyment of the property, not only without due process of law, but without any pretense of compensation. Property does not consist alone in something that is tangible, but the right to use is as much property as the land itself. *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Chicago &c. R. R. Co.* v. *Minnesota,* 134 U. S. 418, 458; *Muhlker* v. *R. R. Co.,* 197 U. S. 544; *Westervelt* v. *Gregg,* 12 N. Y. 202, 209; *Forter* v. *Scott,* 136 N. Y. 577, 584.

The police power only begins where the Constitution ends; and when its exercise encroaches upon vested constitutional rights, courts should not be concerned with the probable purposes for which it is exercised, or the evils which it was designed to correct. The legislation defended under this power must be reasonable, must be moderate, and have proportion in its means to the end sought to be reached. *Mugler* v. *Kansas,* 123 U. S. 623, 661; *Lawton* v. *Steele,* 152 U. S. 133, 137; *Wright* v. *Hart,* 182 N. Y. 330, 341; *Fisher* v. *Woods,* 187 N. Y. 90, 94; *Health Dept.* v. *Rector,* 145 N. Y. 32, 39.

The business conducted by this defendant is purely private and not affected by public interest. The purpose of the act is a purely private and selfish one, namely, to deprive the owners of wells which are bored or sunk into the rock of their property, and create business for the benefit of owners of wells which are not sunk or drilled into the rock, and to legislate out of existence the natural gas industry. *People* v. *Gillson,* 109 N. Y. 389, 399; *Wright* v. *Hart,* 182 N. Y. 330, 344; *Huber* v. *Merkel,* 117 Wisconsin, 355.

The act in question is unreasonable. Freund on Po-

lice Power, p. 61; *People* v. *Gas Co.*, 196 N. Y. 421, 440.

The burden in this case is not fanciful, but real and substantial; the placing of this burden of proof upon one and not upon his neighbor similarly situated is forbidden by the Fourteenth Amendment. *County of San Mateo* v. *Southern Pacific Ry. Co.*, 13 Fed. Rep. 722, 733; *Wynehamer* v. *People*, 13 N. Y. 378, 446; *People* v. *Lyon*, 27 Hun, 180; *Railroad Co.* v. *Husen*, 95 U. S. 465.

Defendant alike in civil as in criminal actions is entitled to a presumption of innocence. Especially is this so in civil actions where the judgment will establish the commission of a penal offense. *Grant* v. *Riley*, 15 A. D. 190; *Pollock* v. *Pollock*, 71 N. Y. 137, 142; *Wilcox* v. *Wilcox*, 46 Hun, 32, 40; *N. Y. & B. F. Co.* v. *Moore*, 18 Abb. N. C. 106, 119. The applicable rule is that plaintiffs having invoked the aid of a statute have the burden of showing that their case is within the provisions of the statute. *Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; *Miller* v. *Roessler*, 4 E. D. Smith, 234.

The act denies the equal protection of the laws by prohibiting pumping for the purpose of vending the gas, while permitting the same for any other purpose or use, and prohibiting pumping of wells that go into the rock and permitting pumping of wells that do not go into the rock.

Before classification of this kind can be successfully accomplished some difference must be shown bearing a reasonable and just relation to the things as to which the classification is established. To be constitutional, the law must bear equally upon all engaged in a like business. *Missouri* v. *Lewis*, 101 U. S. 22; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362, 399; *Barbier* v. *Connolly*, 113 U. S. 27, 31; *Gulf &c. Ry. Co.* v. *Ellis*, 165 U. S. 150; 155; *State* v. *Loomis*, 115 Missouri, 307, 314; *Vanzant* v. *Waddel*, 2 Yerger, 260, 270; *Dibrell* v. *Morris' Heirs*, 15 S. W. Rep. (Tenn.) 87, 95; *Cotting* v. *Kansas*,

183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *People* v. *Van De Carr*, 91 App. Div. 20; aff'd 178 N. Y. 425; *People* v. *Murphy*, 195 N. Y. 126; *People* v. *Zimmerman*, 102 App. Div. 103; *Lindsley* v. *Gas Co.*, 162 Fed. Rep. 954, 960; *Hathorn* v. *Gas Company*, 194 N. Y. 326, 341.

The statute violates the Fourteenth Amendment in that it takes private property for private purposes. *Re Albany Street*, 11 Wend. 151; *Bloodgood* v. *R. R. Co.*, 18 Wend. 9; *Missouri Pacific Ry. Co.* v. *Nebraska*, 164 U. S. 403; *Gilman* v. *Line Point*, 18 California, 229; *Tyler* v. *Beacher*, 44 Vermont, 656; *Cole* v. *LaGrange*, 113 U. S. 1; *Great Western Gas & Oil Co.* v. *Hawkins*, 30 Ind. App. 566.

Restricting the use of property or the taking or depriving of any right therein is a taking of property within the meaning of the Constitution, and when such restriction or taking is primarily for the benefit of other individuals, or to aid the use by individuals of their property, in which the public has no use but only an indirect benefit, if any, then the taking is of private property for private purposes and is prohibited by the constitutional enactments.

*Mr. Charles C. Lester* and *Mr. Nash Rockwood*, with whom *Mr. Edward R. O'Malley*, Attorney General of the State of New York, was on the brief, for appellees:

This court will accept and follow the interpretation of the statute as given by the state tribunals; and the judgment of the state courts construing the meaning and scope of the act is conclusive here. The interpretation of this act by the Court of Appeals is in precise accord with the common-law rule of relative property rights which has long been declared and enforced in the State to which the statute applies. The statute, as so construed, infringes no property right, and transcends no constitutional limitation. *People* v. *N. Y. Carbonic Co.*, 196 N. Y. 421; *Hathorn* v.

*Natural Carbonic Gas Co.*, 194 N. Y. 326; *Forbell* v. *City of New York*, 164 N. Y. 522; *People* v. *Squires*, 107 N. Y. 593; *Smith* v. *City of Brooklyn*, 18 App. Div. 340; *Hathorn* v. *Strong*, 55 Misc. Rep. 445.

The courts of the several States have the right to construe their own statutes; this is a function to be exercised exclusively by them, and their judgment upon such matters is conclusive upon all Federal tribunals. *Palmer* v. *Texas*, 212 U. S. 118, 131; *United States* v. *Munson*, 213 U. S. 118, 131; *Stutsman Co.* v. *Wallace*, 142 U. S. 293; *Moores* v. *National Bank*, 104 U. S. 625; *Bauserman* v. *Blut*, 147 U. S. 647; *Fairfield* v. *Gallatin*, 100 U. S. 47.

The act is constitutional. The doctrine enunciated by the Court of Appeals in the cases arising under the present statute is not a new doctrine, but has been stated in successive decisions and recognized as the law of the State of New York. See cases *supra*. *Merrick Water Co.* v. *Brooklyn*, 32 App. Div. 454, distinguished. See 160 N. Y. 657.

The foundation of this rule of common ownership of percolating waters is recognized by high authority as applicable to this State. *Westphal* v. *New York*, 75 App. Div. 562; aff'd 177 N. Y. 140, 256.

Ownership in the particular drops of water begins only when they are reduced to possession, prior to which they are a common stock, the taking of which and their reduction to possession the legislature may regulate. *State* v. *Ohio Oil Well Co.*, 150 Indiana, 21; *Westmoreland Gas Co.* v. *DeWitt*, 130 Pa. St. 235; *Jones* v. *Forest Oil Co.*, 44 Atl. Rep. 1074; *Brown* v. *Vandergrift*, 80 Pa. St. 142; *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190; and see as to power of legislature exercised in similar cases, *American Express Co.* v. *People*, 9 L. R. A. 139; *Phelps* v. *Racey*, 60 N. Y. 10; *Magner* v. *People*, 97 Illinois, 333; *Lawton* v. *Steele*, 152 U. S. 139; *Commonwealth* v. *Chapin*, 5 Pick. 199; *McCready* v. *Virginia*, 94 U. S. 391; *Vinton* v. *Welsh*,

9 Pick. 87; *Commonwealth* v. *Essex Co.*, 13 Gray, 239; *Smith* v. *Levinus*, 8 N. Y. 472; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; *Gentile* v. *State*, 29 Indiana, 409.

The act does not deny equal protection of the laws. It creates no class of persons deprived of the equal protection of the laws. All are alike forbidden to pump such wells; all persons similarly situated are affected alike; it does not unlawfully discriminate against any. *State* v. *Hogan*, 63 Ohio St. 202; *Dent* v. *West Virginia*, 129 U. S. 114; *Jones* v. *Brim*, 165 U. S. 184; *Minneapolis & St. L. Ry. Co.* v. *Beckwith*, 129 U. S. 29; *Soon Hing* v. *Crowley*, 113 U. S. 705; *Louisiana* v. *Schlemmer*, 42 La. Ann. 1166; *Des Moines* v. *Keller*, 116 Iowa, 648; *Sutton* v. *State*, 96 Tennessee, 696.

A statute is not obnoxious to the constitutional provision in question because its effect may be confined to a particular class of citizens, if the law be general in its application to the class to which it applies and if the distinction be not arbitrary, but rests upon some reason of public policy growing out of the condition of business of such class. *People* v. *Havnor*, 149 N. Y. 195; *Missouri* v. *Lewis*, 101 U. S. 22, 30; *Powell* v. *Pennsylvania*, 127 U. S. 678; *People ex rel. Armstrong* v. *Warden*, 183 N. Y. 223.

If the statute does create classes its classification is reasonable and neither unnecessary nor arbitrary. *Peel Splint Co.* v. *West Virginia*, 36 W. Va. 302.

For cases which uphold legislative classifications that rest upon rational foundations see *Hayes* v. *Missouri*, 120 U. S. 68; *Railroad Co.* v. *Mackey*, 127 U. S. 205; *Walston* v. *Nevin*, 128 U. S. 578; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Giozza* v. *Tiernan*, 148 U. S. 657; *Columbus Southern Ry. Co.* v. *Wright*, 151 U. S. 470; *Manhant* v. *Pa. R. R. Co.*, 153 U. S. 380; *St. Louis & San Francisco Ry. Co.* v. *Mathews*, 165 U. S. 1; *Bacon* v. *Walker*, 204 U. S. 316.

The legislature has the right of judging what it deems harmful or what it deems should be safeguarded and need not include all harmful acts or guard against everything that apparently needs guarding. *Musco* v. *United Surety Co.*, 132 App. Div. 300.

The act is a valid exercise of the police power. Its purpose and effect are to prevent the waste and destruction of the natural resources of the State. Cooley on Const. Lim. 572; *People* v. *Squires*, 107 N. Y. 650; *Commonwealth* v. *Alger*, 7 Cushing, 85; *Meffert* v. *Packer*, 66 Kansas, 710; *S. C.*, 195 U. S. 625; *People* v. *King*, 110 N. Y. 418; *Barbier* v. *Connolly*, 113 U. S. 31; *C., B. & Q. Railway Co.* v. *Drainage Comm.*, 200 U. S. 592; *Thorpe* v. *Rutland R. R. Co.*, 27 Vermont, 140.

With questions of expediency, wisdom, fairness and other like questions the courts have nothing to do, unless the act exceeds all bounds of reason; the judgment of the legislature is final. *Hunter* v. *Pittsburgh*, 207 U. S. 161, 176; *Booth* v. *Illinois*, 184 U. S. 425, 429; *Welch* v. *Swasey*, 214 U. S. 91, 105; *Forsythe* v. *Hammond*, 166 U. S. 506, 518; *Williams* v. *Eggleston*, 170 U. S. 304; *Kelly* v. *Pittsburgh*, 104 U. S. 78; *Wilson* v. *North Carolina*, 169 U. S. 586, 593; *Clayborne County* v. *Brooks*, 111 U. S. 400, 410; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; *Laramie County* v. *Albany Co.*, 92 U. S. 307; *Covington* v. *Kentucky*, 173 U. S. 731.

In the exercise of this power, there is no taking of property in the sense in which the Constitution requires compensation to be made therefor. *Chicago &c. Ry. Co.* v. *Chicago*, 166 U. S. 226, 255; *C., B. & Q. R. R. Co.* v. *Drainage Comm.*, 200 U. S. 561, 583; *West Chicago R. R. Co.* v. *Chicago*, 201 U. S. 506, 526.

Nor is property taken without due process of law. *Mugler* v. *Kansas*, 123 U. S. 623; *Kidd* v. *Pearson*, 128 U. S. 1, 15.

The public have such an interest in the mineral waters

of Saratoga as justifies the interposition of the legislature for their protection. *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190; *Hudson Water Co.* v. *McCarter,* 209 U. S. 349, 355; *Kansas* v. *Colorado,* 185 U. S. 141, 142; *S. C.,* 206 U. S. 46, 99; *Georgia* v. *Tenn. Copper Co.,* 206 U. S. 230, 238; *Hathorn* v. *Natural Carbonic Gas Co.,* 194 N. Y. 326, 349; *Geer* v. *Connecticut,* 161 U. S. 519; *Lawton* v. *Steele,* 152 U. S. 133; *Munn* v. *Illinois,* 94 U. S. 113; *License Cases,* 5 How. 504; *Kidd* v. *Pearson,* 128 U. S. 1; *Barbier* v. *Connolly,* 113 U. S. 27; *Crowley* v. *Christensen,* 137 U. S. 86; *People* v. *Rosenberg,* 184 N. Y. 135; *People* v. *Squire,* 107 N. Y. 593; aff'd 145 U. S. 175; *Smith* v. *Maryland,* 18 How. 71. See 22 Am. & Eng. Ency. Law, p. 917.

The presumption in favor of the validity of the act is not overthrown by any of the allegations of the bill of complaint. *People* v. *N. Y. Carbonic Acid Gas Co.,* 196 N. Y. 421.

It is not for one who asserts rights under a statute to prove, as a condition precedent to its enforcement, that the legislature had the right to enact it. He may stand upon the presumption of validity until such presumption is overthrown. *Beecher* v. *Allen,* 5 Barb. 169; *Rochester* v. *Briggs,* 50 N. Y. 533, 558; *People* v. *Draper,* 15 N. Y. 532, 543; *Carter* v. *Rice,* 135 N. Y. 437, 484; *Sturgis* v. *Fallon,* 152 N. Y. 1, 11; *Cronin* v. *People,* 82 N.Y. 318, 323; *Granger* v. *Jockey Club,* 148 Fed. Rep. 513; *McLean* v. *Arkansas,* 211 U. S. 547.

MR. JUSTICE VAN DEVANTER, having made the foregoing statement, delivered the opinion of the court.

The statute, against whose enforcement the suit is directed, contains several restrictive provisions more or less directly connected with the purpose suggested by its title, but we are concerned with only the one before set forth, because the Court of Appeals of the State has pronounced

the others invalid and counsel have treated them as thereby eliminated from the statute and from present consideration.

Coming to the provision in question, it is necessary to inquire what construction has been put upon it by the highest court of the State, for that construction must be accepted by the courts of the United States and be regarded by them as a part of the provision when they are called upon to determine whether it violates any right secured by the Federal Constitution. *Weightman v. Clark*, 103 U. S. 256, 260; *Morley v. Lake Shore Railway Co.*, 146 U. S. 162, 166; *Olsen v. Smith*, 195 U. S. 333, 342. The Court of Appeals of the State had the statute before it in *Hathorn v. Natural Carbonic Gas Co.*, 194 N. Y. 326, and again in *People v. New York Carbonic Acid Gas Co.*, 196 N. Y. 421, and the elaborate opinions then rendered disclose that the court, having regard to the title of the act and to the doctrine of correlative rights in percolating waters which prevails in that State, as recognized in *Forbell v. City of New York*, 164 N. Y. 522, construed this provision, not as prohibiting the specified acts absolutely or unqualifiedly, but only when the mineral waters are drawn from a source of supply not confined to the lands of the actor but extending into or through the lands of others, and then only when the draft made upon that source of supply is unreasonable or wasteful, considering that there is a coequal right in all the surface owners to draw upon it. In other words, the court, by processes of interpretation having its approval, read into the provision an exception or qualification making it inapplicable where the waters are not drawn from a common source of supply, and also where, if they be drawn from such a source, no injury is done thereby to others having a like right to resort to it.

As so interpreted, the statute presupposes (1) the existence, in porous rock beneath the lands of several pro-

prietors, of a supply of mineral waters of the class speci-
fied; (2) a right in each proprietor to penetrate the
underlying rock or natural reservoir and to draw upon
the supply therein; and (3) a practice or tendency on the
part of proprietors who exercise this right in the manner
and for the purpose specified, that is, by boring or drilling
wells into the rock and pumping or artificially drawing
the waters for the purpose of collecting and vending the
gas as a separate commodity, to make excessive or waste-
ful drafts upon the common supply to the injury and
impairment of the rights of other proprietors. And what
is thus presupposed is treated in several decisions of the
courts of the State and in other public papers as having
actual existence and as being widely recognized. It is to
prevent or avoid the injury and waste suggested that the
statute was adopted. It is not the first of its type. One
in principle quite like it was considered by this court in
*Ohio Oil Co.* v. *Indiana,* 177 U. S. 190. There oil and gas
in a commingled form were contained in a stratum of
porous rock, underlying the lands of many owners, and
because these fluids were inclined to shift about in the
common reservoir in obedience to natural laws one surface
owner could not excessively or wastefully exercise his
right of tapping the reservoir and drawing from its con-
tents without injuriously affecting the like right of each
of the others. The oil and gas were both of value, but as
the greater value attached to the oil some surface owners,
whose wells tapped the common reservoir and brought to
the surface both oil and gas, collected and used only the
oil and suffered the gas to disperse in the air. This and
kindred practices resulted in the adoption of a statute
declaring them unlawful, and the validity of the statute
was called in question. The objections urged against it
were much the same as those now pressed upon our atten-
tion; but upon full consideration all were overruled. After
commenting upon the peculiar attributes of oil and gas

which cause them be to excepted from the principles generally applied to minerals having a fixed situs, and also upon the prevailing rule that each surface owner in an oil and gas area has the exclusive right on his own land to seek the oil and gas in the reservoir beneath, but has no fixed or certain ownership of them until he reduces them to actual possession, this court said:

"They [meaning the surface owners] could not be absolutely deprived of this right which belongs to them without a taking of private property. But there is a coequal right in them all to take from a common source of supply the two substances which, in the nature of things, are united, though separate. It follows, from the essence of their right and from the situation of the things as to which it can be exerted, that the use by one of his power to seek to convert a part of the common fund to actual possession may result in an undue proportion being attributed to one of the possessors of the right, to the detriment of the others, or by waste by one or more, to the annihilation of the rights of the remainder. Hence it is that the legislative power, from the peculiar nature of the right and the objects upon which it is to be exerted, can be manifested for the purpose of protecting all the collective owners by securing a just distribution to arise from the enjoyment by them of their privilege to reduce to possession and to reach the like end by preventing waste. . . . Viewed, then, as a statute to protect or to prevent the waste of the common property of the surface owners, the law . . . which is here attacked because it is asserted that it devested private property without due compensation, in substance, is a statute protecting private property and preventing it from being taken by one of the common owners without regard to the enjoyment of the others."

And, taking up subordinate contentions advanced in support of the principal one, the court also said:

"First. It is argued that as the gas, before being al-

lowed to disperse in the air, serves the purpose of forcing up the oil, therefore it is not wasted, hence is not subject to regulation. Second. That the answer averred that the defendant was so situated as not to be able to use or dispose of the gas which comes to the surface with the oil; from which it follows that the gas must either be stored or dispersed in the air. Now, the answer further asserted that when the gas is stored and not used the back pressure, on the best-known pump, would, if not arresting its movement, at least greatly diminish its capacity. Hence it is said the law, by making it unlawful to allow the gas to escape, made it practically impossible to profitably extract the oil. That is, as the oil could not be taken at a profit by one who made no use of the gas, therefore he must be allowed to waste the gas into the atmosphere and thus destroy the interest of the other common owners in the reservoir of gas. These contentions but state in a different form the matters already disposed of. They really go not to the power to make the regulations, but to their wisdom. But with the lawful discretion of the legislature of the State we may not interfere."

If the statute there assailed did not work a deprivation of property without due process of law, it is difficult to perceive that there is any such deprivation in the present case. The mineral waters and carbonic acid gas exist in a commingled state in the underlying rock, and neither can be drawn out without the other. They are of value in their commingled form and also when separated, but the greater demand is for the gas alone. Influenced by this demand, some surface owners, having wells bored or drilled into the rock, engage in extensive pumping operations for the purpose of collecting the gas and vending it as a separate commodity. Usually where this is done an undue proportion of the commingled waters and gas is taken from the common supply and a large, if not the larger, portion of the waters from which the gas is col-

lected is permitted to run to waste. Thus these pumping operations generally result in an unreasonable and wasteful depletion of the common supply and in a corresponding injury to others equally entitled to resort to it. It is to correct this evil that the statute was adopted, and the remedy which it applies is an enforced discontinuance of the excessive and wasteful features of the pumping. It does not take from any surface owner the right to tap the underlying rock and to draw from the common supply, but, consistently with the continued existence of that right, so regulates its exercise as reasonably to conserve the interests of all who possess it. That the State, consistently with due process of law, may do this is a necessary conclusion from the decision in the case cited. But were the question an open one we still should solve it in the same way.

We do not overlook the statement in appellant's brief that the mineral waters reached by the gas company's wells do not exist in any underground reservoir and do not come from any common source, but we cannot give it any effect. It is contrary to what the courts of the State apparently regard as the real situation at Saratoga Springs, and is without support in the present record. While the bill alleges that the waters are percolating waters, not naturally flowing to or upon the surface, that description of them is not inconsistent with their existence in a natural reservoir of porous rock underlying the lands of several owners. Besides, if we accepted it as true that they do not constitute a common source of supply, that is, one to which other surface owners have an equal right to resort, it then would have to be held that the gas company's acts are not within the prohibition of the statute, as construed by the Court of Appeals of the State, and therefore that the appellant, as owner and holder of capital stock and bonds of the company, is not harmed by the statute and is not entitled to draw in question or test its validity.

*Clark* v. *Kansas City,* 176 U. S. 114, 118; *Tyler* v. *Judge,* 179 U. S. 405; *Turpin* v. *Lemon,* 187 U. S. 51, 60; *Hatch* v. *Reardon,* 204 U. S. 152, 160.

Neither do we overlook the allegation in the bill that the gas company's pumps do not exert any force upon waters in or under adjoining lands, but lift to the surface only such waters "as flow by reason of the laws of nature into the wells;" but we regard it as of little importance, because if the wells reach a common source of supply excessive or wasteful pumping from them may affect injuriously the rights of other surface owners, although the force exerted by the pumps does not reach their lands.

Because the statute is directed against pumping from wells bored or drilled into the rock, but not against pumping from wells not penetrating the rock, and because it is directed against pumping for the purpose of collecting the gas and vending it apart from the waters, but not against pumping for other purposes, the contention is made that it is arbitrary in its classification, and consequently denies the equal protection of the laws to those whom it affects.

The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One

who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Bachtel* v. *Wilson*, 204 U. S. 36, 41; *Louisville & Nashville R. R. Co.* v. *Melton*, 218 U. S. 36; *Ozan Lumber Co.* v. *Union County Bank*, 207 U. S. 251, 256; *Munn* v. *Illinois*, 94 U. S. 113, 132; *Henderson Bridge Co.* v. *Henderson City*, 173 U. S. 592, 615.

Unfortunately the allegations of the bill shed but little light upon the classification in question. They do not indicate that pumping from wells not penetrating the rock appreciably affects the common supply therein, or is calculated to result in injury to the rights of others, and neither do they indicate that such pumping as is done for purposes other than collecting and vending the gas apart from the waters is excessive or wasteful, or otherwise operates to impair the rights of others. In other words, for aught that appears in the bill, the classification may rest upon some substantial difference between pumping from wells penetrating the rock and pumping from those not penetrating it, and between pumping for the purpose of collecting and vending the gas apart from the waters and pumping for other purposes, and this difference may afford a reasonable basis for the classification.

In thus criticising the bill, we do not mean that its allegations are alone to be considered, for due regard also must be had for what is within the range of common knowledge and what is otherwise plainly subject to judicial notice. *Brown* v. *Piper*, 91 U. S. 37, 43; *Brown* v. *Spilman*, 155 U. S. 665, 670; *McLean* v. *Denver & Rio Grande R. R. Co.*, 203 U. S. 38, 51; *McNichols* v. *Pease*, 207 U. S. 100, 111. But we rest our criticism upon the fact that the bill is silent in respect of some matters which, although essential to the success of the present contention, are neither within the range of common knowledge nor otherwise plainly subject to judicial notice. So, applying the rule that one who assails the classification in such a law must carry the

burden of showing that it is arbitrary, we properly might dismiss the contention without saying more. But it may be well to mention other considerations which make for the same result.

From statements made in the briefs of counsel and in oral argument we infer that wells not penetrating the rock reach such waters only as escape naturally therefrom through breaks or fissures, and if this be so, it well may be doubted that pumping from such wells has anything like the same effect—if, indeed, it has any—upon the common supply or upon the rights of others, as does pumping from wells which take the waters from within the rock where they exist under great hydrostatic pressure.

As respects the discrimination made between pumping for the purpose of collecting and vending the gas apart from the waters and pumping for other purposes, this is to be said: The greater demand for the gas alone and the value which attaches to it in consequence of this demand furnish a greater incentive for exercising the common right excessively and wastefully when the pumping is for the purpose proscribed than when it is for other purposes; and this suggestion becomes stronger when it is reflected that the proportion of gas in the commingled fluids as they exist in the rock is so small that to obtain a given quantity of gas involves the taking of an enormously greater quantity of water and to satisfy appreciably the demand for the gas alone involves a great waste of the water from which it is collected. Thus, it well may be that in actual practice the pumping is not excessive or wasteful save when it is done for the purpose proscribed.

These considerations point with more or less persuasive force to a substantial difference, in point of harmful results, between pumping from wells penetrating the rock and pumping from those not penetrating it, and between pumping for the purpose of collecting and vending the gas apart from the waters and pumping for other purposes.

If there be such a difference it justifies the classification, for plainly a police law may be confined to the occasion for its existence.   As is said in *Carroll* v. *Greenwich Insurance Co.*, 199 U. S. 401, 411: "If an evil is specially experienced in a particular branch of business, the Constitution embodies no prohibition of laws confined to the evil, or doctrinaire requirement that they should be couched in all-embracing terms."

In conclusion upon this point, it suffices to say that the case as presented, instead of plainly disclosing that the classification is arbitrary, tends to produce the belief that it rests upon a reasonable basis.

Another objection urged against the statute arises out of a ruling of the Court of Appeals of the State, to the effect that in proceedings for the enforcement of the statute one who, for the purpose of collecting and vending the gas as a separate commodity, engages in pumping such waters from wells bored or drilled into the rock, is *prima facie* within the prohibition of the statute, and must take the burden of showing that he comes within the exception or qualification, before mentioned, whereby the statute is made inapplicable where the waters are not drawn from a common source of supply, and also where, if they be drawn from such a source, no injury is done thereby to others having a right to resort to it. Because of this ruling, which is treated as if read into the statute, it is insisted that the latter impinges upon the guarantees of due process of law and equal protection of the laws.   But we think the insistence is untenable, and for these reasons:

Each State possesses the general power to prescribe the evidence which shall be received and the effect which shall be given to it in her own courts, and may exert this power by providing that proof of a particular fact, or of several taken collectively, shall be *prima facie* evidence of another fact.   Many such exertions of this power are

shown in the legislation of the several States, and their validity, as against the present objection, has been uniformly recognized save where they have been found to be merely arbitrary mandates or to discriminate invidiously between different persons· in substantially the same situation. *Bailey* v. *Alabama*, 219 U. S. 218, 238; *Board of Commissioners* v. *Merchant*, 103 N. Y. 143, 148. The · validity of such a statute was brought in question in the recent case of *Mobile &c. Railroad Co.* v. *Turnipseed*, 219 U. S. 35, 43, and it was there said by this court:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under ·guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed. If a legislative provision, not unreasonable in itself, prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him."

The statute now before us, as affected by the ruling mentioned, makes proof of certain designated facts *prima facie*, but not conclusive, evidence of the common source of the waters and of the injurious effect of the pumping, that is to say, it establishes a rebuttable presumption, but neither prevents the presentation of other evidence to overcome it nor cuts off the right to make a full defense. As respects the source of the waters, the presumption appropriately may be regarded as prompted by the

fact, now well recognized, that the pervious rock in which the waters exist usually is of such extent as to reach much beyond the lands of a single proprietor and to constitute a common source of supply, and, as respects the effect of the pumping, the presumption appropriately may be regarded as prompted by the fact, before stated, that pumping from a common supply in the rock for the purpose of collecting and vending the gas as a separate commodity usually is carried on in a manner which is calculated to affect injuriously, and does so affect, the rights of others to take from that supply. Regarding the presumption as prompted by these considerations, as we think should be done, it cannot be said that there is not a rational connection between the designated facts which must be proved and the facts which are to be presumed therefrom until the contrary is shown. What we have said upon the subject of classification sufficiently answers the suggestion or claim that by reason of the presumption the statute discriminates invidiously between different persons in substantially the same situation.

For these reasons none of the objections urged against the statute can be sustained, and so the decree dismissing the bill is

*Affirmed.*