AMALITHONE REALTY CO., INC., a Domestic Corporation, Plaintiff, *v.* THE CITY OF NEW YORK and RUSSELL FORBES, Commissioner of Purchase of the City of New York, Defendants.

Supreme Court, Special Term, New York County, May 3, 1937.

*B. M. Robinson*, for the plaintiff.

*Paul Windels, Corporation Counsel [Alvin McK. Sylvester* of counsel], for the defendants.

ROSENMAN, J. This is a taxpayer's action against the city of New York and its commissioner of purchase. The defendants have invited bids for the sale to the city of certain printed matter known as index books of vital statistics for the year 1936 for the department of health.

There appear to be two recognized methods of producing such books: (1) The process known as letterpress or typographic printing; and (2) the process known as lithographic printing. The proposals invited bids for each method; and stated that if an award were made for one method, there would be no award for the alternative method. The lowest bid received for the lithographic process was $3,587.50. The lowest bid for the typographic process was $6,272.

The city intends to award the contract to the lowest bidder in the typographic class. The reason asserted by the commissioner

for this determination to make the award at a cost obviously higher to the city than required by the alternative method, is that the typographic method will produce more enduring records than the lithographic, and that in the case of these vital statistics, permanency is essential.

The workers employed in the lithographic method of printing are organized in a union called the Lithographers of America. Those engaged in the typographic process, on the other hand, are organized in unions composing the Allied Printing Trades Council. There is naturally competition between the two classes of printing, with resultant friction between the respective unions.

On April 12, 1934, the board of city record, whose functions were later transferred by statute to the commissioner of purchase, adopted a resolution that all printed matter (except letterheads and envelopes) purchased for the city shall bear the label of the Allied Printing Trades Council. The natural effect of this resolution is to bar lithographic printers from city work because their workers do not belong to a union in this council.

The plaintiff seeks to enjoin by this motion (1) the proposed award for the index books by the letterpress method on the ground that it will not be to the lowest bidder, and (2) insistence by the city upon compliance with the foregoing resolution with respect to the label in its future proposals for bids for printing.

The city of New York is justified in its demand that the materials and supplies sold to it by contractors be manufactured by union labor. Such authorities in this State as may be urged to hold the contrary, like *Davenport* v. *Walker* (57 App. Div. 221, 3d Dept. 1901) and *People ex rel. Single Paper Co., Ltd.,* v. *Edgcomb* (112 id. 604, 4th Dept. 1906), will not be deemed controlling.

Much progress has been made in economic thinking since the time of those decisions. Even though the immediate cost in dollars and cents to the city may be higher than the cost of sweatshop products, we have now come to recognize the greater ultimate cost to the people as a whole which results from low wages, overlong hours and unsanitary working conditions. The presence of the union label may reasonably be considered as a fair assurance that the products have been manufactured under conditions in accord with our present day social consciousness. In these days when much of the effort of government is directed toward securing decent standards of pay and work for labor, not only by direct legislation but also by legislation protecting the right of collective bargaining, it would certainly be strange to say that the city or State itself may not insist that its own products be made according to fair standards.

Indeed, even the plaintiff here does not complain that the city has excluded from competitive bidding goods which are not union-made. It complains rather that the city has selected the label of one union as against another union. In this, its complaint is justified.

The Amalgamated Lithographers of America, so far as the record here discloses, is a *bona fide*, recognized labor union. It is affiliated with the American Federation of Labor, the New York State Federation of Labor, the New York Trades and Label Council of New York City and the Union Label Trades Council of New York City. There is nothing to cast doubt on its *bona fides* as a union or on the effectiveness of its activities in behalf of its members. Under such circumstances, the city has no right to insist upon the presence of the label of the Allied Printing Trades Council, whose members are engaged in letterpress printing, in preference to the label of the Amalgamated Lithographers of America, whose members are engaged in lithographic printing. In the competition between these two types of printing — lithographic and letterpress — the city cannot under the guise of selecting the label of the union in one, exclude the other. Therefore, the continuance of the requirement that all printed matter purchased by the city bear the label of the Allied Printing Trades Council will be enjoined.

A different conclusion might be reached if it could be shown that the union excluded was not in fact a *bona fide* labor union organized solely for the benefit of the workers in the industry.

In so far as the contract for the printing of the index books of vital statistics for the department of health is concerned, however, the determination of the commissioner of purchase to award the contract for the letterpress method of printing on the ground that it is more permanent in nature than the lithographic method will not be interfered with by the court in the absence of an allegation of bad faith. (*Talcott* v. *City of Buffalo*, 125 N. Y. 281; *Ziegler* v. *Chapin*, 126 id. 342.)

Settle order.