UPCHURCH *v.* ADELSBERGER.

5-2041                                                 332 S. W. 2d 242.

Opinion delivered February 15, 1960.

[Rehearing denied March 7, 1960]

*McMath, Leatherman & Woods* and *James E. Young-dahl,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott*; By: *Wayne W. Owen,* for appellee.

GEORGE ROSE SMITH, J.  This is a suit by the appellees, a husband and wife doing business as Comet Printing Company, to enjoin the city of North Little Rock from enforcing its Ordinance No. 21, adopted in 1904, which requires that all printed matter, blank books, and stationery used by the city bear the union label of the Allied Printing Trades Council.  The complaint alleges that Comet has a contract with a recognized labor union, the Amalgamated Lithographers of America, but Comet is not entitled to use the union label specified in the ordinance and so is excluded from the opportunity to sell any printed matter to the city.  The city made no defense

to the case, but the appellants, as officers of the Allied Printing Trades Council, were permitted to intervene and defend, and they have appealed from a decree finding the ordinance to be invalid and enjoining its enforcement.

The proof shows that the Allied Printing Trades Council is made up of four AFL-CIO unions, being the Typographers, the Printing Pressmen, the Bookbinders, and the Stereotypers. The Allied label may be used by any printing shop that has contracts with at least two of these four unions. Of thirty-seven printers who are listed in the Greater Little Rock telephone directory eight are entitled to use the Allied label. Only one of the eight is situated in North Little Rock, and that one company has received substantially all the city's printing business for at least the past twenty-two years. The Amalgamated Lithographers is, according to the exhibits in evidence, an independent union that was organized in 1882 and has some 36,000 members. It has contracts with at least two printing shops in Little Rock.

The appellants offered testimony to show that printed matter bearing the Allied label is uniformly of high quality and that the members of Allied's four .component unions receive retirement benefits and other advantages accruing from their union membership. We do not detail this testimony, which is not disputed, as it does not control the outcome of the case.

Preliminarily, the appellants question the appellees' right to attack the ordinance, as the appellees did not offer proof of their contract with the Amalgamated Lithographers. It is stipulated, however, that the appellees are citizens and taxpayers of North Little Rock, and this gives them sufficient standing to challenge an assertedly wrongful expenditure of public funds. *Townes* v. *McCollum,* 221 Ark. 920, 256 S. W. 2d 716; Garner, Sloan, and Haley, Taxpayers' Suits to Prevent Illegal Exactions in Arkansas, 8 Ark. L. Rev. 129.

On the merits the chancellor was right in holding the ordinance invalid. As far as we can discover the authorities are unanimous in declaring discriminatory

and void any municipal ordinance which attempts to confine the award of public contracts to persons privileged to use a certain union label. Ordinances involving the particular label now before us, that of the Allied Trades Council, were declared invalid in *City of Atlanta* v. *Stein,* 111 Ga. 789, 36 S. E. 932, 51 L. R. A. 335, and *Marshall & Bruce Co.* v. *City of Nashville,* 109 Tenn. 495, 71 S. W. 815. See also *Amalithone Realty Co.* v. *City of New York,* 162 Misc. 715, 295 N. Y. S. 423, where, as here, the rival unions were the Allied Printing Trades Council and the Amalgamated Lithographers of America.

McQuillin accurately summarizes the reasoning that underlies the uniform holding of the courts: ''On principle it would seem that, as the primary duty of the public officers is to secure the most advantageous contract possible for accomplishing the work under their direction, any regulation which prevents the attainment of this end is invalid. A law demanding competition in the letting of public work is intended to secure unrestricted competition among bidders, and hence, where the effect of an ordinance is to prevent or restrict competition and thus increase the cost of the work, it manifestly violates such law and is void, as are all proceedings had thereunder. It may be further observed that, according to the judicial view so far declared, all such ordinances are void on the constitutional ground of discrimination.'' McQuillin, Municipal Corporations (3d Ed.), § 29.48.

Monopolies are forbidden by the Arkansas constitution, Art. 2, § 19; and by statute purchases involving more than $300 can be made by cities of the first class only after competitive bidding. Ark. Stats, 1947, § 19-1022. Ordinance No. 21, which has created a virtual monopoly in the city's printing business for many years, cannot be reconciled with the controlling provisions of the constitution and statutes. The city is free to designate the kind of printing that it desires and to assure itself of good quality by the adoption of appropriate specifications, but it cannot follow a course by which all

public contracts are channeled into the hands of favored bidders.

Affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. The record in this case, in my opinion, does not justify the conclusion reached by the majority. Had the case been fully developed my final conclusion possibly would be different. However, based solely on the record before us, I am unwilling to say that Ordinance No. 21, adopted by North Little Rock in 1904, is unconstitutional on its face.

Fundamental to challenge of an enactment of any governmental body is the presumption of constitutionality. This presumption is necessary to prevent litigious chaos and has been recognized at every level of judicial decision. Appellants offered evidence which was not refuted: that printing establishments bearing the mark of the Allied Printing Trades Council were required to meet certain standards; that the members of the organizations making up the Council were required to serve certain apprenticeships and receive the benefit of continued education in their craft; that their methods of operation were completely different from those of appellees. There was nothing in the record to show that other printing establishments were prohibited from meeting the standards required by the ordinance.

The presumption of constitutionality is a fundamental rule of construction announced and adhered to throughout the history of this Court: *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9; and for the many modes and manner of expressing this rule and the heavy burden placed on the party alleging unconstitutionality see: Comment 2, Ark. Law Review, 203; similarly, see: *Lindsey* v. *Natural Carbonic Gas Company,* 220 U. S. 61, a federal case holding that a substantial difference in method of operation justifies a classification and that the burden is on attacking party to prove it unreasonable. A careful review of this record reveals that appellee

offered practically no testimony that can be considered as meeting this burden.

The established presumption is important in all phases of the instant case. It is based, of course, on the reluctance of the courts to interfere with the enactments of a coordinate branch of the government: the legislatures. As Chief Justice McCulloch stated in a leading Arkansas case on constitutional principles, *Ex Parte Byles,* 93 Ark. 612, 126 S. W. 94 (1910):

''The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fails, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason and expediency with the law-making power.''

For the reasons stated above, I respectfully dissent.