RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; MIGUEL BALLESTER RIPOLL, Intervener.

No. 193. Argued January 18, 1949.—Decided March 30, 1949.

Vicente Géigel Polanco, Attorney General (Luis Negrón Fernández, former Attorney General, on the briefs) and Elmer Toro Lucchetti, Assistant Attorney General, for petitioner. J. J. Ortiz Alibrán, for intervener, respondent in the main action.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Francisco and Miguel Ballester Ripoll are the only *socios* of Ballester Hermanos. It is stipulated in the deed of *sociedad* that the profits shall be distributed at the rate of sixty per cent for Francisco Ballester and forty per cent for Miguel Ballester. For the years 1941 and 1942 the Treasurer notified Miguel Ballester of deficiencies in his individual income tax amounting to $27,119.82 and $64,459.48 respectively. The taxpayer appealed from the decision of the Treasurer to the Tax Court of Puerto Rico on the ground that the said deficiencies did not exist inasmuch as the *sociedad* had not distributed the said profits nor had they been credited to his personal account, nor in any other manner put at his disposal, but that they had been included in special accounts. The Tax Court upheld the taxpayer's contention on the ground that §§ 4(a) and 15(a) of the Income Tax Act did not provide for taxation of *socios* on the undivided profits of a *sociedad*, and that if they were given the interpretation proposed by the Treasurer, such construction would make §§ 4(a) and 15(a) unconstitutional. It added that the undivided profits of *sociedades* could only be taxed if they

fell within the purview of § 21 of the same Act. To review this decision, we issued the present writ of certiorari.

## I

■■■■ Section 15 (a) as approved in 1925 defines "gross income" Thus: "The term 'gross income' includes gains, profits, and income derived from . . . interest, rent, dividends, *partnership profits*, . . . or gains or profits and income derived from any source whatever; . . ." (Italics ours.) And § 4 (a), as approved in 1925 defines the term "profits" as: ". . . any distribution made by a partnership to its members and participants . . .".

Since the Treasurer was of the opinion that § 4 (a) as approved in 1925 included the undivided profits of *sociedades*, it provided in § 90 of the Regulation: "The distributive share of the profits of a partner in a partnership is regarded as received by him *although not distributed.*" (Italics ours.)

In *Behn* v. *Domenech, Treas.*, 49 P.R.R. 790, § 90 of the Regulation was challenged on the ground that in adopting it, the Treasurer exceeded his authority to issue regulations, inasmuch as said Section went beyond the provisions of § 4 (a), as the latter did not authorize taxation of undivided profits. This Court upheld the taxpayer's contention on the ground set forth by him, without considering whether it was lawful to tax a *socio* on the profits to which he was entitled but which had not been distributed.

Subsequently, the Legislature approved Act No. 31 of April 12, 1941 (Sess. Laws, p. 478) which, among other Sections, amended § 4 (a) in the sense that the term "profits" shall mean: ". . . any share or *right to share in a partnership, which belongs to its partners or participants in each taxable year out of the earnings or profits of any partnership.*" (Italics ours.)

There is no doubt that the new definition of the word "earnings" (profits) was prompted by the decision in *Behn*

v. *Domenech, Treas., supra.* It is true that said case was decided in 1936 and that the amendment of § 4 (*a*) was enacted in 1941. But this lapse of time between our decision and the amendment does not mean that the Legislature, in effecting the latter in 1941, did not have in mind what was held by this Court in 1936. That this is so is demonstrated by the fact that if the Legislature had intended to leave untaxed the undivided profits of *sociedades* it would not have changed the definition of the term "profits". As we have seen, prior to the amendment of 1941, the term "profits" was defined as "any distribution made by a partnership to its members", while in the amendatory Act of 1941 the words "any distribution" were eliminated and replaced by "any share or right to share . . . which belongs to its partners or participants in each taxable year out of the earnings or profits of any partnership." It is true that our Legislature could have been clearer if it had added the phrase "although not distributed"; but having revealed its purpose to tax any profit corresponding to the *socios* although not distributed, we should not ignore the legislative intent simply because the lawmaker was not as explicit as he could have been. This leads us to the conclusion that under the Act of 1941 the term "profits" includes any earning or profit which belongs to the *socio* although not distributed.

In consonance with the new definition, the Treasurer now claims the right to tax the profits forty per cent of which corresponded to the taxpayer during 1941 and 1942. The Tax Court as well as the taxpayer contend that the undivided profits of a *sociedad* can be taxed only when the case comes within the purview of § 21 (*a*) of the Income Tax Act.[1] But

---

[1] Section 21 (*a*) of the Income Tax Act, provides:

"If any partnership or corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its members or shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable

in view of the amendment of § 4(a), § 21(a), insofar as *sociedades* are concerned, is now academic. As the profits of the *socios* are subject to taxation as soon as declared and even before they are distributed, there would be no occasion to apply § 21(a). In other words in view of § 4(a), as amended, a *sociedad* never could be used for the purpose of evading the tax that ought to be imposed on the *socios* for their profits. Of course, the Legislature could have but did not eliminate from § 21(a) the reference to *sociedades;* but its failure to do so does not mean that § 4(a) ought not to be construed in the manner propounded by us.

## II

■ Having established that the legislative intent was to tax the undistributed profits of the *socios* which actually belonged to them, the next step is to determine whether the Legislature could enact such a statute.

It is a well-settled doctrine in regard to *sociedades* that the *socios* have a vested right in the profits as soon as they are determined. This is precisely the object of *sociedad:* to obtain profits for its *socios.* The *sociedad* is not the owner of the profits. Once they have been determined, the partners may claim them if the partnership refuses to deliver them. But in the present case the *socios* agreed to put them in a special account and they now contend that these profits are not subject to income tax. From the moment that the profits were determined, they were at the disposal of the *socios* and the fact that they later agreed to put them in a profit and loss account, does not exempt them from the tax imposed by law. This could not have been done without the consent of all the *socios;* consequently, in our opinion, it is

year upon the net income of such partnership or corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by Section 28 of this title and shall (except as provided in subdivision (d) of this Section) be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax."

the same as if they, having received the profits, had assigned them to some other person or had disposed of them in any other manner.

## III

But both the Tax Court and the taxpayer main-- tain that this interpretation is unconstitutional because it amounts to depriving the taxpayer of his property without due process of law and that the law lacks the uniformity required by constitutional principles. Merely because the Legislature levies a tax it can not be maintained that it is depriving the taxpayer of his property without due process of law. For this to be so, the tax must be, for some ground, wrongfully assessed. In the present case, the only question which in our opinion could be raised by the taxpayer with some appearance of reason, is the apparent discrimination that exists in taxing the *socios* for undistributed profits and not taxing the stockholders of a corporation for undistributed dividends. We say that this argument has the appearance of reason, because it does not take into account the difference between *sociedades* and corporations. Both are legal enti-- ties separate from its *socios* or stockholders. But in the *sociedad*, to capitalize or to withhold the profits until a certain day, depends exclusively on the will of its *socios*. In a corporation, the declaration and distribution of dividends does not depend on the will of the stockholders. It is the Board of Directors that declares and distributes them when advisable in the interests of the corporation. The Board of Directors could perhaps find it convenient for the corporation to invest the profits in machinery, land or any other item necessary to carry out its ends and in that event, in the absence of fraud or serious abuse of discretion, the stockholder can not compel a corporation to distribute dividends. See Ballantine on Corporations (Rev. ed. 1946) § 231 *et seq.* Hence the Legislature was justified in levying a tax on the profits had but not distributed to *socios*. *Lindsley* v. *Natu-*

*ral Carbonic Gas Co.*, 220 U. S. 61, 78 (1911); *Rivera v. District Court.* 62 P.R.R. 491; *People* v. *Avilés,* 54 P.R.R. 257.

For the reasons stated we are of the view that the theory of the Treasurer is entirely correct and accordingly the decision of the Tax Court must be reversed and the case remanded for further proceedings not inconsistent with the principles herein announced.

Mr. Justice Negrón Fernández did not participate herein.