Thomas H. **WINSETT,** Plaintiff,

v.

F. Earl **McGINNES** et al., Defendants.

Civ. A. No. 74–210.

United States District Court,
D. Delaware.

Dec. 30, 1976.

---

Arlen B. Mekler, and Eugene J. Maurer, Jr., of Mekler & Maurer, Wilmington, Del., for plaintiff.

Keith A. Trostle, Asst. Atty. Gen., Civ. Div., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This action was brought by Thomas Winsett, an inmate at the Delaware Correctional Center ("D.C.C."), pursuant to 42 U.S.C. § 1983. The gravamen of plaintiff's complaint is that the denial by prison officials of his request for classification to the work release program at D.C.C. was based on constitutionally impermissible reasons, thereby depriving him of liberty without due process of law and of equal protection under law. Plaintiff seeks injunctive and declaratory relief, as well as damages for the money he would have earned had he been working.

The Court on its own motion raised the question of subject matter jurisdiction and requested the parties to brief the issue. Defendants now question the Court's subject matter jurisdiction, contending that plaintiff's factual allegations, even if cor-

rect, cannot sustain a claim for relief under 42 U.S.C. § 1983, but are cognizable, if at all, only on habeas corpus.[1] Moreover, since plaintiff has failed to exhaust his state remedies on this claim, defendants maintain that it would be inappropriate for the Court to treat the complaint as a petition for habeas corpus. Before addressing the merits of defendants' contentions, a brief review of the factual background of plaintiff's claim is in order.

Plaintiff Winsett was convicted in 1964 of killing Robert Paris, a State police officer, during the commission of a felony (burglary), for which he received a life sentence. The public's reaction to Officer Paris' death can only be characterized as understandable and justifiable outrage.

On September 16, 1974, approximately ten years after his conviction and imprisonment, Winsett requested classification to work release status.[2] On September 23, 1974, after considering the personal application of Winsett, and taking cognizance of the violent nature of the offense for which he was convicted,[3] the Minimum Security Building Classification Team nevertheless determined that plaintiff satisfied the requirements for placement on work release status, and the Team Chairman so informed Winsett of its conclusion. The recommendation was then forwarded to the Institution Classification Committee ("I.C.C.") which concurred in the recommendation, and then forwarded it to Superintendent

---

1. Defendants have approached this matter as if they had filed a motion to dismiss although, in fact, they did not.

2. The following criteria govern assignment to the work/educational release program at D.C.C.:

 ".You must be assigned to the Minimum Security Building
 .You must make a personal request for the program
 .You must be willing to cooperate in the treatment aspect of the program
 .You must have a positive history of participating in institutional reatment programs
 .You must be within one year or less of your short-term release or parole eligibility date
 .You must be interviewed and approved by the Work/Education Release staff

 .You must be classified for work or educational release by the Institutional Classification Committee[.]"
 Inmate Reference Manual, Appendix G, Educational Release Program—Policies and Rules, at G2–G3 (attached to complaint).

3. If an inmate is serving a sentence in which the underlying conviction involved drugs, alcohol, or an act of violence, the Classification Teams are directed to "consider the case very cautiously before considering [the inmate] for a Work or Educational Release assignment." Inmate Reference Manual, Appendix G, *supra* at G3.

Anderson, a defendant herein, on September 24, 1974. The following day, Deputy Superintendent Donald Davis, also a defendant herein, issued and delivered a written denial of his application.

Winsett contends that the denial (and continuing denial) of his classification request was the product of fear of political repercussions from the state legislature if Winsett were to be placed on work release, because of the public's continued "sensitivity" to his killing of a State police officer. As evidence of this motive, Winsett references alleged statements of Superintendent Anderson characterizing him (Winsett) as a "political prisoner," and indicating that Winsett will *never* be placed on work release as long as he is the Superintendent at D.C.C. Winsett claims that such considerations constitute an unconstitutional basis for denying him participation in the work release program, where he has satisfied all other requirements for eligibility. He further alleges that likelihood of his eventual parole[4] has been diminished by the denial, since participation in the work release program is weighed heavily by the parole board.

The instant jurisdictional question arose because of *Parson v. Keve,* 413 F.Supp. 111 (D.Del.1976).[5] In *Parson,* the plaintiff had filed suit under 42 U.S.C. § 1983, claiming that he had been denied furlough, work release and educational release "because of intense public resentment against [him] for the crime which he committed and because of defendant's fear of potential reprisal which could adversely affect all of the correctional rehabilitative programs . . ." at the institution. *Parson, supra,* 413 F.Supp. at 112. Chief Judge Latchum, in granting defendant's motion to dismiss in *Parson,* held that plaintiff's action was:

> "not properly brought to enforce § 1983 rights, but is in effect and intent an action to obtain conditional *release* from the fact of his present physical confine-

ment for the purpose of participating in outside prison activities such as furloughs, work or educational release programs." *Id.*

The Chief Judge then concluded that since Parson was challenging the fact of his physical confinement as it presently existed, his suit "falls within the 'core of habeas corpus.'" *Id.* at 113.

Defendants contend that *Parson* is controlling and should be followed in the instant matter. Plaintiff suggests that *Parson* can be distinguished on the grounds that *Parson* sought only equitable and declaratory relief, whereas here the plaintiff is seeking damages (in addition to equitable and declaratory relief). In support of this distinction, plaintiff points to two relatively recent Supreme Court decisions.

The first case cited by plaintiff is *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), also relied upon by Chief Judge Latchum in *Parson* as the decision initially demarcating the line between habeas corpus and section 1983 actions. Plaintiffs in *Preiser* were state prisoners who had participated in New York's conditional release program, through which a prisoner serving an indeterminate sentence could earn up to ten days per month "good-behavior-time credits" toward reduction of his maximum sentence. For various disciplinary reasons the good-time credits of each were canceled. Immediately thereafter, each plaintiff brought a civil rights action under 42 U.S.C. § 1983 claiming that his credits unconstitutionally had been canceled and seeking their restoration, which in each case would result in immediate release on parole. The Supreme Court rejected their claims, holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole

---

4. Plaintiff first became eligible for parole in February, 1975.

5. The present case was filed prior to the *Parson* decision, but on two occasions, trial dates were postponed. The second postponement was ordered to await the decision in *Parson,* subsequent to which the parties were asked to brief its significance in this case.

federal remedy is a writ of habeas corpus[,]" with the attendant requirement of exhaustion of state remedies. 411 U.S. at 500, 93 S.Ct. at 1841.

One of the objections raised by the prisoners to such a holding was that it might preclude a prisoner in states like New York from ever obtaining damages for constitutional deprivations for which habeas corpus is the exclusive federal remedy, since damages are not available in federal habeas corpus proceedings and New York law contains no provision authorizing a damages claim brought by state prisoners against state officials.

To this argument the Supreme Court gave the following response:

"The answer to this contention is that the respondents here sought no damages, but only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies. Cf. *Ray v. Fritz*, 468 F.2d 586 (CA 2 1972)." 411 U.S. at 494, 93 S.Ct. at 1838.

The clear import of this language is that a non-frivolous damage claim falls outside the scope of relief which could be granted in federal habeas corpus.

The Court also explained the procedure to be employed if a prisoner were both to seek damages *and* challenge the fact or duration of his confinement:

"If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his later claim, under our decision today, is cognizable only in federal habeas corpus,

with its attendant requirement of exhaustion of state remedies. But, consistent with our prior decisions, that holding in no way precludes him from simultaneously litigating in federal court, under § 1983, his claim relating to the conditions of his confinement." 411 U.S. at 499 n. 14, 93 S.Ct. at 1841.

Elaboration on the *Preiser* holding was forthcoming in the second case cited by the plaintiff, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff* the plaintiffs also claimed that they had good-time credits taken away in a manner not comporting with the requirements of due process, thereby giving rise to a cause of action under 42 U.S.C. § 1983 for restoration of the good-time credits and damages. The Supreme Court, reaffirming *Preiser,* held that restoration of good-time credits may not be obtained under section 1983, but also made clear that damages and declaratory and other relief for improper revocation of good-time credits are cognizable under section 1983. As the Court explained:

"The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under *Preiser.* But the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S. at 499 n. 14, [93 S.Ct. 1827, at 1841]. Respondent's damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct. Such a declaratory judgment as a predicate to a damages award would not be barred by Preiser; and because under that case only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of

invalid prison regulations." 418 U.S. at 554–55, 94 S.Ct. at 2974 (footnote omitted).

Defendants do not attempt to directly contradict the language contained in *Preiser, supra,* and *McDonnell, supra.* Rather they argue that this Court still has discretion to refuse to hear a damage claim under section 1983, particularly if the damage claim is no more than an artifice to obtain a ruling on the legality of the plaintiff's confinement. In support of this proposition they cite two cases,[6] *Galloway v. Watts,* 395 F.Supp. 729 (D.Md.1975), and *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir. 1974); however, neither is applicable to the facts of the instant case. *Galloway v. Watts, supra,* is inapposite because in that case petitioner's section 1983 attack was directed to the validity of his conviction and resulting incarceration. Similarly, *Guerro v. Mulhearn, supra,* is inapplicable since a determination of the damage claim there presented would have required a ruling upon the validity of a state criminal conviction during the pendency of state criminal appellate processes.[7] Both *Galloway* and *Guerro* were predicated on the principle of comity, *cf. Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), which simply is not a factor in the present case, since the validity of Winsett's conviction is not at issue.

This is not to suggest that defendants' general contention is completely meritless, for there well may be claims for damages under section 1983 which on their face are so clearly frivolous that outright dismissal would be acceptable. However, one cannot state on the present record that this is such a case.

 While it is held this Court has jurisdiction of the complaint, it is noted that among the prayers for relief plaintiff requests that this Court enter an order requiring "that defendants Anderson and Davis instate plaintiff currently to work release status . . .."[8] Assuming this relief to be one of the primary objectives of plaintiff, the Court cannot grant this relief since it is proscribed by *Preiser* and *Parson.* If plaintiff were to prevail, the most plaintiff could hope to achieve is a declaration that his rights have been infringed, an award of damages if plaintiff can successfully prove the same, and possibly a prospective injunction prohibiting future infringement of those rights.[9] This circumstance might cause plaintiff to maturely consider the advisability of pursuing this matter, including the damage claim, in the state court.

Accordingly, it is held this Court does have jurisdiction of the damage claim but

---

6. Defendants cite three other cases, *Landman v. Peyton,* 370 F.2d 135 (4th Cir. 1966); *Bennett v. California,* 406 F.2d 36 (9th Cir. 1969); and *Keeton v. Procunier,* 468 F.2d 810 (9th Cir. 1972), in support of their position, but as all three predate *Preiser v. Rodriguez,* they are of limited weight.

7. Most noteworthy and further militating against the position of defendants is the fact that in *Guerro,* in which there were two appellants (Guerro and Andrews) before the court, the First Circuit only affirmed the dismissal of the claim of one of the appellants (Andrews) on the grounds that consideration of the damage claim would have forced a ruling on the validity of state court conviction. In the case of the second appellant (Guerro), whose damage claim did not appear to implicate the state court conviction, the First Circuit remanded the damage claim rather than affirming the dismissal. *Guerro v. Mulhearn, supra,* 498 F.2d at 1225. It should also be noted that dismissal of the prayers for equitable relief by both Guerro and Andrews was affirmed.

8. Complaint, Prayer for Relief 3(b).

9. Although *Wolff* indicates that some ancillary injunctive relief can be granted in section 1983 actions even if the underlying controversy otherwise would be considered to fall within the scope of habeas corpus, 418 U.S. at 555, 94 S.Ct. 2963, it is unclear whether this language was intended to sanction the granting of prospective injunctive relief when to do so would almost totally replicate the relief that the petitioner could obtain were he successful in petitioning for writ of habeas corpus. Since this matter was neither addressed by the parties nor affects resolution of the underlying jurisdictional question, the issue of the availability of prospective injunctive relief in this type of situation remains an open question.

**614**

has no jurisdiction to order individual defendants to grant the requested mandatory relief.