**Joseph C. JAMIESON, Appellant,**

v.

**William B. ROBINSON, Commissioner of Correction of Pennsylvania, and James F. Howard, Warden of State Correctional Institution.**

**No. 79–1972.**

United States Court of Appeals, Third Circuit.

Submitted Dec. 16, 1980.

Decided Feb. 12, 1981.

Joseph C. Jamieson, pro se.

Robert S. Englesberg, William A. Webb, Deputy Attys. Gen., William C. O'Toole, Asst. Atty. Gen., Harvey Bartle, III, Atty. Gen., Pittsburgh, Pa., for appellees.

Before ADAMS, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The principal question in this case is whether a prisoner's right to equal protection of the laws is violated by a state's failure to institute a work release program at a particular state institution.

On April 2, 1979, appellant, Joseph C. Jamieson, an inmate at the State Correctional Institute (S.C.I.) at Pittsburgh, Pennsylvania, filed a civil rights action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343, alleging a deprivation of his right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. The complaint sought declaratory relief under 28 U.S.C. §§ 2201 and 2202, a preliminary and permanent injunction, and any other relief deemed just and equitable by the court.

Specifically, Jamieson averred that he had applied for work release pursuant to 61 P.S. § 1051 *et seq.* and Bureau of Corrections Directive BC–ADM 805 (Rev. 1/77), but that the defendants thwarted his request. The complaint states that Jamieson first approached prison counselor Kenneth Lechwar, who advised him that no work release program existed at S.C.I., Pittsburgh. Jamieson next approached James F. Howard, the Warden of S.C.I., Pittsburgh, who told him that "we have neither work release nor work release applications. I cannot give you something we don't have." (Inmate's Request to Staff Member, response dated November 30, 1978). At approximately the same time, Jamieson sought an application from the Commissioner of the Bureau of Corrections, William B. Robinson, who responded that not all state correctional institutions have "work release programs" in operation, but that if Jamieson met the necessary criteria for "pre-release status," he could apply through his prison counselor.

Jamieson thereafter filed his complaint against Robinson and Howard, claiming that he was denied the right to apply for a work release program because no such program existed at S.C.I., Pittsburgh, and that the lack of such a program subjected him to invidious discrimination in violation of state law, Bureau of Corrections regulations, and the equal protection clause of the Fourteenth Amendment. Jamieson sought a declaratory judgment that he was denied the right to apply for work release and that the absence of a work release program of S.C.I., Pittsburgh abridges the equal protection guarantee. He also requested a preliminary and permanent injunction compelling the defendants to take immediate steps to establish a work release program at S.C.I., Pittsburgh. Jamieson did not seek a reduction in the term of his sentence or damages for the alleged constitutional violations.

The defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6). They asserted that Jamieson's factual contentions were incorrect, and they urged the court to dismiss the complaint as frivolous because Jamieson has no right, constitutional or otherwise, to be released from prison prior to his minimum release date.

In response, Jamieson submitted affidavits from other prisoners which averred that work release programs exist at the state correctional facilities at Graterford and Huntingdon. He also argued that he has a statutory entitlement, pursuant to 61 P.S. § 1051 *et seq.*, to apply for work release, an entitlement that had been frustrated by the defendants. Finally, Jamieson complained that the defendants refused to expand the pre-release program to allow all qualified inmates to participate.

After consideration of the complaint and the motion to dismiss, the magistrate filed a Report and Recommendation that defendants' motion be granted. Focusing on Jamieson's request for the establishment of a work release program at S.C.I., Pittsburgh, the magistrate appears to have concluded that Jamieson should have asserted such a request in a petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] The Report stated that federal courts lack authority to direct that a state prisoner be permitted to participate in a work release, so long as there is no allegation that the denial is arbitrary or capricious.[2] Since no such allegation was set forth in the complaint, the magistrate recommended that defendants' motion to dismiss be granted.

Jamieson filed objections to the magistrate's Report, insisting that it contained three errors. First, Jamieson asserted that contrary to the magistrate's analysis, he was *not* seeking an order directing the prison authorities to allow him to participate in a work release program. He maintained rather, that the state is under a duty to establish such programs, that it has refused to do so, and that Jamieson sought to correct this omission. Second, Jamieson argued that there was invidious discrimination against inmates at S.C.I., Pittsburgh, because at least two other maximum security facilities in Pennsylvania had established work-release programs, while there was none at S.C.I., Pittsburgh. He noted that he had submitted sworn affidavits to support these contentions and that the magistrate had failed to consider them. Jamieson also objected to the Report on the ground that the magistrate simply ignored his allegations that he was denied his statutory right to apply for a work-release program.

After considering the magistrate's Report and Jamieson's objections to it, the district court, on June 12, 1979, entered an order adopting the Report and dismissing the complaint, Jamieson filed a timely notice of appeal.

On appeal, Jamieson urges that the district court should not have dismissed his complaint unless it appeared beyond a doubt that he could not have established facts that would have entitled him to relief. He again sets forth his claims of invidious discrimination violative of the equal protection clause. Defendants respond that under the applicable "minimal scrutiny" or "rational basis" equal protection analysis, Jamieson's allegations failed to state a claim upon which relief could be granted. For reasons that are somewhat at variance with those advanced by the magistrate, the district court, and by the defendants, we affirm.

---

1. The magistrate relied on *Parson v. Keve*, 413 F.Supp. 111 (D.Del.1976) (allegation of improper denial of an opportunity to participate in a work release program is an attack on a sentence properly raised in a habeas corpus petition after exhaustion of state remedies) and *Winsett v. McGinnes*, 425 F.Supp. 609 (D.Del. 1976) (where relief sought is direction that claimant be permitted to participate in work release, proper procedure is to file a petition for writ of habeas corpus). In *Winsett*, this Court reversed the dismissal of the prisoner's § 1983 complaint. 617 F.2d 996 (3d Cir. 1980) (en banc), *cert. denied,* —— U.S. ——, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981).

2. *Sanno v. Preiser*, 397 F.Supp. 560 (S.D.N.Y. 1975).

## I. Habeas Corpus

The magistrate predicated his Report and Recommendation on the theory that Jamieson's complaint challenging the availability of work release programs at S.C.I., Pittsburgh and his ability to qualify for such a program sounded in habeas corpus. In making such a determination, the magistrate was without the benefit of our opinion in *Wright v. Cuyler*, 624 F.2d 455 (3d Cir. 1980), which was handed down after the magistrate filed his report.

In *Wright*, which concerned the same sections of Pennsylvania law that are involved here, this Court determined that the eligibility or lack of eligibility for temporary home furloughs may be called into question directly under section 1983, without recourse to habeas corpus and its concommitant exhaustion requirements. Central to our decision in that case was the distinction between a challenge to the fact or duration of confinement, such as a request for an immediate or speedier release from confinement, which is the core of habeas corpus, and an attack on the conditions of confinement, which is cognizable under 42 U.S.C. § 1983. *Id.* at 457–58. See *Preiser v. Rodriguez*, 411 U.S. 475, 498–99, 93 S.Ct. 1827, 1840–1841, 36 L.Ed.2d 439 (1973). We determined in *Wright* that when a prisoner questions his failure to be admitted to a home furlough program, he attacks the conditions, rather than the ultimate duration, of his confinement. The present suit is also distinguishable from a habeas corpus proceeding. As Jamieson points out, the relief he requests would not serve to diminish the length of his incarceration; rather, he seeks only to alter the conditions of his confinement.

To the extent that the magistrate and the district court failed to anticipate *Wright* or to apply *Preiser*, their rationale for dismissing the complaint was incorrect. Our analysis of the merits of Jamieson's claims, however, leads to the conclusion that the dismissal of his complaint must be affirmed nonetheless.

When reviewing the dismissal of a complaint, we must accept as true the well-pleaded allegations of the pleading. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In *Scheuer v. Rhodes* the United States Supreme Court explained:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

With these precepts in mind, we turn to an examination of Jamieson's complaint. Our scrutiny of the district court record discloses no equal protection violations.

## II. Equal Protection

Under Pennsylvania law, prisoners in certain classifications are provided the opportunity to apply for pre-release work and educational programs.[3] Jamieson asserts that at least two maximum security prisons in Pennsylvania—Graterford and Huntingdon—have established functioning work release programs, but that there is none at

---

**3.** Plans for these programs are authorized at 61 P.S. § 1051 *et seq.*; official policy is set forth in

Bureau of Corrections Directive BC–ADM 805 (Rev. 1/77). *See Wright v. Cuyler, supra.*

S.C.I., Pittsburgh. This dispute, he alleges, constitutes invidious discrimination in violation of the Fourteenth Amendment's guarantee of equal protection of the laws.

"[S]tatutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." *Ferguson v. Skrupa*, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). In *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911), the Supreme Court summarized what are still the prevailing rules for determining the line between permissible and invidious discrimination:

> 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that should sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary.

220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).

■ The foundation of this standard is the rule that "... [t]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the objective of the legislation, so that all persons simi-larly circumstanced shall be treated alike." *F. S. Royster Guano Company v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561–562, 64 L.Ed. 989 (1920). Under this rational basis test,[4] if the justification for the disparate treatment is neither arbitrary nor capricious, but grounded on some reasonable policy, there is no denial of equal protection of the laws.

■ Prison authorities are given wide latitude in determining programs of treatment, because

> ... courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities. (footnotes omitted)

*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1976). *See also Jones v. North Carolina Prisoners Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Main Road v. Aytch*, 522 F.2d 1080, 1085 (3d Cir. 1975).

■ Pennsylvania statutes governing pre-release programs, 61 P.S. § 1051 *et seq.*, vest broad discretion in the Board of Correction with regard to the location of pre-release centers, the types of programs available, and the administrative criteria for pre-release. 61 P.S. § 1051 states that:

> "[t]he Bureau of Correction, Department of Justice, shall have the power and its duty shall be to establish with the approval of the Governor such prisoner pre-release centers *at such locations throughout the Commonwealth as it may deem necessary to carry out effective prisoner pre-release programs therefrom.*

Section 1052(b) provides that:

> "[a]ny person transferred to and confined in a pre-release center may be released therefrom temporarily with or without direct supervision at the discretion of the

---

**4.** The rational basis test provides the appropriate standard of review in this case. Jamieson alleges no discrimination implicating either a suspect classification or a fundamental interest, so as to require strict scrutiny or a compelling state interest.

Bureau of Correction in accordance with rules and regulations as provided in section 3 of this act, *for the purposes of gainful employment, vocational or technical training, academic education and such other lawful purposes as the bureau shall consider necessary and appropriate for the furtherance of the inmate's individual pre-release program* subject to the compliance with subsection (c) of this section. (emphasis added)

Section 1053 declares that:

"[t]he Bureau of Corrections shall establish rules and regulations for granting and administering release plans and *shall determine those inmates who may participate in any plan.* If any inmate violates the rules or regulations prescribed by the bureau, *his release privileges may be withdrawn.* (emphasis added)

■ The emphasized sections reflect the discretionary aspects of pre-release programs. Jamieson has not alleged that there is no reasonable basis for the discretionary standard in the laws, nor does he claim that the laws have been arbitrarily or capriciously applied. Indeed, as the Supreme Court has stressed, it is certainly reasonable, and perhaps necessary, for a legislature to vest broad discretion in prison authorities, who are in the best position to evaluate whether a pre-release program would be workable at any particular institution. We cannot say that the particular choice exercised here by the prison administrators—not to have a work release program at S.C.I., Pittsburgh—is irrational or otherwise arbitrary. There may be numerous legitimate factors that militate against such a program at any given prison, including the size and condition of the facility, the extent of overcrowding, the ratio of staff to inmates, the ease or burden of monitoring a particular work release program, the degree of security within the institution, and the type or volatility of the inmate population at the particular location. The task of assessing these factors and deciding whether any sort of arrangement is appropriate is properly committed to the sound discretion of prison officials. Thus, the absence of a work release program at S.C.I., Pittsburgh does not, without more, constitute a denial of equal protection, because the discretionary decision not to have such a program rests on a reasonable policy decision.[5]

## CONCLUSION

While the magistrate's Report and Recommendation erroneously treated some of Jamieson's contentions, his complaint nevertheless does not set forth a cause of action under the equal protection clause. Accordingly, the order dismissing the complaint will be affirmed.

5. This is not to suggest that a work release program at S.C.I., Pittsburgh is not desirable.

The only question before us is whether there *must* be such a program.