**Joseph WEISS**

v.

**William MADER, et al.**

**Civ. A. No. 81–1844.**

United States District Court, E. D. Pennsylvania.

Nov. 4, 1981.

Howard S. Kaplan, Adler, Barish, Levin & Creskoff, Philadelphia, Pa., for plaintiff.

Mark N. Cohen, Deputy Atty. Gen., Commonwealth of Pennsylvania, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

This court has before it defendants' motion for summary judgment. Plaintiff, a

prisoner in the State Correctional Institution at Graterford (hereinafter "Graterford"), commenced the underlying action against defendants, officials in the Pennsylvania Department of Education and Pennsylvania Bureau of Correction, pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343. Plaintiff alleges that money designated for the educational rehabilitation of Graterford's inmates was diverted to some other purpose. He also claims that Graterford is allotted proportionately less money per inmate than any other state correctional institution. As a result of these policies, plaintiff claims that he was deprived of access to programs for his educational rehabilitation in violation of the equal protection and due process clauses of the Fourteenth Amendment.

The relief requested is a declaratory judgment that plaintiff's constitutional rights have been violated and an order: (1) enjoining the funding of educational programs for the year commencing July 1, 1981 until the court approves an equitable distribution of funds on a per capita basis; (2) reinstating all the funds to Graterford which were withheld as determined by a court-ordered audit of the Correction Education division's books; and (3) requiring the monies designated for Graterford to be spent on Graterford's needs and dispersed on a per capita basis. Plaintiff also filed a Motion for Preliminary Injunction essentially repeating the contentions set forth in his complaint and additionally alleging that he will suffer irreparable harm if denied the rehabilitation benefits of education.

Defendants have filed a motion for summary judgment asserting that judgment in their favor is appropriate as a matter of law since plaintiff has not alleged facts sufficient to establish a deprivation of an interest protected by either the due process or equal protection clauses of the Fourteenth Amendment. Plaintiff responds that the diversion of educational funds allocated to Graterford constituted a deprivation of a property interest without procedural due process protections. He further asserts that the failure to allocate funds on a per capita basis violates his right to equal protection since such an allocation method lacks a rational basis.

After careful consideration of the papers submitted by the parties and the pleadings filed to date, I agree with defendants and grant defendants' motion for summary judgment for the following reasons. My holding renders moot plaintiff's motion for preliminary injunction.

It is undisputed that plaintiff is a prison inmate at Graterford, over 21 years of age, who has an educational background which exceeds the level of courses offered at Graterford. Plaintiff claims to have been denied post-secondary educational opportunities at Graterford.

■ Initially, defendants raise the issue of standing, contending that plaintiff lacks standing, since he has not demonstrated the requisite "personal stake in the outcome" of the case. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). However, I find that plaintiff has standing. He is an inmate at a correctional facility who desires to participate in educational programs. He alleges that the funding policies of defendants have denied him access to these programs in violation of constitutional rights protected by the Fourteenth Amendment.

Defendants have not asserted that post-secondary education programs for which plaintiff qualifies are beyond the ambit of the educational rehabilitation programs which are subject to defendant's funding policies. Thus, the alleged funding policies may well have deprived plaintiff of an opportunity to participate in educational rehabilitation programs. Accordingly, plaintiff has demonstrated a personal stake in the outcome of this case sufficient to grant him standing.

Plaintiff bases his claim for relief on two different theories. He claims (1) that diversion of funds allocated to Graterford for educational purposes deprived him of a property interest protected by the due process clause; and (2) that his rights to equal protection were violated by allocation of funds on a basis other than a *per capita* basis.

I shall treat separately plaintiff's claims.

### Plaintiff's Due Process Claim

Courts which have considered the question generally hold that prisoners enjoy no constitutional right to educational opportunities *per se*. *Hayes v. Cuyler*, 475 F.Supp. 1347 (E.D.Pa.1979); *Diehl v. Wainwright*, 419 F.2d 1309 (5th Cir. 1970); *Breedlove v. Cripe*, 511 F.Supp. 467 (N.D.Tex.1981); *Jordon v. Keve*, 387 F.Supp. 765 (D.Del.1974); *U. S. ex rel. Cleggett v. Pate*, 229 F.Supp. 818 (N.D.Ill.1964); *Ahrens v. Thomas*, 434 F.Supp. 873 (W.D.Mo.1977), *aff'd in part and modified in part*, 570 F.2d 286 (8th Cir. 1978).

However, plaintiff contends that even though there may be no constitutional right standing alone, once the state chooses to provide funds for educational rehabilitation, the plaintiff obtains a "property interest" in those funds which cannot be denied without due process of law. It is fundamental that before a "property interest" is created within the meaning of the due process clause, plaintiff must have a claim of entitlement to the property, stemming from an independent source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 596–98, 92 S.Ct. 2694, 2696–2698, 33 L.Ed.2d 570 (1972); *Bishop v. Wood*, 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–2078, 48 L.Ed.2d 684 (1976). Here, plaintiff has provided no authority or evidence to establish a "claim of entitlement" to the educational funds allocated to Graterford, sufficient to create a "property interest" in his favor.

Moreover, there is undisputed evidence that even if such an interest exists, it was never violated by the state. The affidavit of William Mader, Chief, Correction Education Division, Pennsylvania Department of Education, asserts that "contrary to plaintiff's allegation, large sums of money that had originally been designated to educate inmates at Graterford, have not been unlawfully diverted from that institution. Furthermore, during the period of time June 1, 1980 through June 30, 1981 an additional $75,000.00 has been allocated to Graterford to upgrade the dental laboratory, establish a welding program and learning center."

Plaintiff has presented no opposing affidavits to contradict this assertion, stating merely that such information is within the personal knowledge of defendants. Plaintiff asserts in his complaint, however, that he worked within the Graterford school since December, 1977 and that in this capacity he had access to, and kept the books on, the flow of funds from the various contracts which govern the disbursement of funds. He further asserts that he noticed large sums of money designated by the Commonwealth and federal government for the education of Graterford inmates were not being used for this purpose, but were being diverted. In spite of his alleged access to evidence to support his claim of diversion, plaintiff does not offer a single specific example of the alleged diversion of funds. Under the circumstances, plaintiff had an obligation to come forward with evidence to contradict the affidavit of Mr. Mader which flatly states that educational funds were not diverted. He has not done so, despite his purported access to such evidence.

Under Fed.R.Civ.Pro. 56(c) summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. When a party moving for summary judgment supports his motion with affidavit evidence, Fed.R.Civ.Pro. 56(e) states that the opposing party may not rest on the pleadings to defeat summary judgment. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), *reh. denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Bochner v. Quitman*, 87 F.R.D. 621, 623 (E.D.Pa.1980).

It is insufficient for plaintiff to rely upon the allegations in his complaint in opposition to defendants' properly supported summary judgment motion. Neither can plaintiff attempt to defeat a summary judgment motion "upon the hope ... that further discovery may develop the essential facts to disclose the existence of genuine issues for

trial." *Carter v. Cuyler*, 415 F.Supp. 852, 855 (E.D.Pa.1976).

Plaintiff has simply not come forward with specific facts sufficient to raise a genuine issue for trial as to his claim that his due process rights were violated by the diversion of educational funds from Graterford. Accordingly, summary judgment in favor of defendants is appropriate as to the due process claim.

### Plaintiff's Equal Protection Claims

■ Summary judgment is also appropriate as to plaintiff's claim that the allocation of educational funds violated his equal protection rights. Plaintiff claims that once the state chooses to make educational funds available it must do so on an equal basis, and that the allocation system adopted by defendants results in unequal distribution of funds among the various correctional facilities. The standard applied to a claimed violation of the equal protection clause when, as here, there is no allegation of discrimination based on suspect classification or fundamental interest is whether there exists a rational basis for the classification. When a plaintiff challenges a classification created by the state, he carries the burden of showing that the classification does not rest upon any reasonable basis but is essentially arbitrary. Further, a classification having some reasonable basis does not violate the equal protection clause merely because it is "not made with mathematical nicety" or because it results in some inequality in practice. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911); *Jamieson v. Robinson*, 641 F.2d 138 (3d Cir. 1981).

■ Here, there is ample undisputed evidence that the allocation system utilized by defendants has a reasonable basis. The uncontradicted affidavit of Mr. Mader establishes that funds for operating the institutional school at Graterford and other correctional institutions are administered by the Department of Education in cooperation with the Bureau of Correction through an inter-agency committee and a designated field liaison agent at the institution. A tentative allocation sheet is drawn up showing anticipated state and federal funds for each institution including Title I funds, vocational education basic education funds, and vocational education guidance and counselling funds. Of all these funding sources, only Title I funds are allocated on a formula basis based on the number of eligible inmates at a particular institution. *See* 20 U.S.C. §§ 2701, 2781. However, it is undisputed that plaintiff does not qualify for these funds since he is over 21 years of age and they are provided only for eligible students in state institutions for neglected or delinquent children, as well as juveniles (under 21 years of age) residing in adult correctional institutions.

Aside from Title I funds, no per capita allocation is required by either federal or state law or regulation. Rather, block state grants are allocated among the correctional institutions in order to continue educational programs meeting the Commonwealth's basic goals which are, in order of priority, (1) basic education to the eighth grade level, (2) attainment of a GED, (3) vocational education diagnosis and training, (4) job placement and (5) post-secondary education. Allocation of education resources is affected by the following items: (1) space available for the education program, (2) average age and turnover rate of the institution's population, (3) basic education and vocational education program at each institution; (4) electrical power available for vocational educational programming and (5) ability to provide security. Post-secondary educational programs, the programs for which plaintiff qualifies, are of the lowest priority and have been scaled down in recent years because, *inter alia*, 65% of the inmates in Pennsylvania function below the eighth grade level in reading and mathematics. It is undisputed that the post-secondary programs do not aid the inmates in attaining the basic reading and mathematical skills, vocational skills and job placement which have been established for Pennsylvania State correctional institutions. Moreover, these programs have always depended upon the voluntary efforts of higher education

institutions and such volunteer participation cannot be compelled.

These uncontradicted facts establish that defendant's system of allocation, while not a *per capita* system, has a rational basis. Block grants are allocated to the different institutions based upon legitimate factors and reasonable policy considerations, including the composition of the inmate population, prison security, physical plant limitations and the basic educational and vocational programs sponsored by each institution. Defendants have set forth, in an uncontradicted affidavit, rational factors which are considered in providing educational funds to correctional institutions. Prison authorities are typically given wide latitude in the internal administration of correctional facilities, and I see no reason in this case to usurp the function of the prison officials in assessing these factors to determine whether a particular educational program is appropriate for a given correctional facility. *See Jamieson v. Robinson*, 641 F.2d 138 (3d Cir. 1981). Defendants' policies and goals governing allocation of educational funds to correctional institutions are rationally based. Plaintiff has presented no evidence to indicate otherwise. The mere fact that there may be variations in educational opportunities throughout the prison system does not mean that the allocation system runs afoul of the equal protection clause.

Accordingly, I find that summary judgment is appropriate in favor of defendants as to plaintiff's claim that his equal protection rights have been violated.