**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1381
_____

EDWARD J. BARR,
                                        Appellant

v.

WILLIAM A. CAPOUILLEZ; JAY DELANEY,
JR.; JOHN DOE NO. 1; JOHN DOE NO. 2;
DOROTHY R. DERR; MATT HOUGH; RALPH
A. MARTONE; JOSEPH J. NEVILLE; RICH
PALMER; DAVID J. PUTNAM; CARL G. ROE;
DAVID W. SCHREFFLER; RONALD A. WEANER

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 11-cv-01672)
District Judge: Honorable Richard P. Conaboy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 4, 2014

Before: RENDELL, GREENAWAY, JR. and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 9, 2015)
_____

OPINION[1]
_____


PER CURIAM

_____

[1] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Edward J. Barr ("Barr") appeals from an order of the District Court granting summary judgment to the defendants. For the reasons that follow, we will affirm.

Barr, a resident of Pocono Lake, sued the Pennsylvania Game Commission in Commonwealth Court, alleging that the new $30.00 fee associated with using the Game Commission's shooting ranges on game lands was arbitrary and capricious. He noted that those who hold a valid, current general hunter or furtaker license pay as little as $13.70 per year for their licenses and are exempt from the $30.00 fee. Barr argued that the fee and application process are irrational and violate the 14th Amendment equal protection and due process rights of those who do not hold a hunter or furtaker license. With respect to the fee itself, he argued that it was exorbitant because the shooting ranges require little maintenance, and, with respect to the application process, "[a]s opposed to simply visiting a local sporting goods shop or the like for a hunting permit, an applicant for a Shooting Range permit may acquire the permit in only one of two ways: (a) By driving to the Defendant's headquarters in Harrisburg or by driving a slightly lesser distance to one of the Defendant's six (6) regional offices," Complaint, at ¶ 15, or making the purchase through the Game Commission's website using a credit or debit card. Barr noted that not everyone in Pennsylvania owns a computer and has access to the internet, nor does everyone possess a debit or credit card. Barr sought injunctive relief and money damages in the amount of $1.00. Specifically, Barr asked the District Court to order the Game Commission to permit shooting range applications by mail, to allow payment by check or money order, and to accept pro-rated payment of the annual $30.00 fee.

2

The Game Commission removed Barr's complaint to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1441(a) & (b), and then moved to dismiss it pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted. The Game Commission argued that it is not a "person" and cannot be sued under 42 U.S.C. § 1983, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989), and that suits against the Commonwealth are barred by the Eleventh Amendment. Barr then moved to amend his complaint. The District Court dismissed the original complaint and authorized Barr to file an amended complaint. In his amended complaint, Barr named as defendants several officials within the Pennsylvania Game Commission and several current and former members of the Board of Game Commissioners. These defendants then answered the amended complaint.

The defendants moved for summary judgment, Fed. R. Civ. Pro. 56(a), identifying Barr's primary claim as one involving alleged unreasonable demands placed upon applicants for a shooting range permit that violate the 14th Amendment's equal protection and substantive due process clauses, and acknowledging his specific complaint that the shooting range permit is more costly than hunting and furtaking licenses, and that the application process is overly burdensome. The defendants argued that they were nonetheless entitled to judgment as a matter of law, because the fee and application process associated with the shooting range permits was rationally related to the Game Commission's legitimate interest in covering the costs associated with maintaining and repairing the shooting ranges, and in regulating the safety of the shooting ranges. They further argued that the application process was not overly burdensome.

Specifically, the defendants argued that, because licensed hunters and furtakers had previously borne the costs of upkeep of the State game lands shooting ranges through their license fees, it was determined that recreational shooters, who were the primary users of shooting ranges in urban areas, should also contribute to the costs of maintenance. Additionally, due to the open availability of the shooting ranges, the Commission was having a difficult time policing and regulating their use, leading to illicit activities occurring at the ranges. The defendants contended that, in developing a fee for the permit, the Commission took into consideration the cost of a hunting or furtaking license – approximately $20.70 per year for adults. They also took into consideration that persons paying for a hunting or furtaking license must first complete Hunter-Trapper education, a course designed to educate applicants on hunting behavior, firearm equipment knowledge, outdoor safety and basic shooting. Because the shooting ranges are located on State game lands, where hunting and trapping take place, and because those individuals at the shooting ranges could benefit from shooting and safety, the Commission determined that it was desirable that shooting range users take Hunter-Trapper education. They therefore decided to increase the price of the recreational shooting range permit to more than that of the hunting or furtaking licenses in order to encourage people to get a hunting or furtaking license and take Hunter-Trapper education. In short, the $30.00 fee was only nominally higher than the hunting or furtaking license and was in no way arbitrary and capricious because it was rationally related to the legitimate goals of safety at, and upkeep of, the shooting ranges.

The defendants also argued that the application process was not constitutionally suspect, explaining that shooting range permits, unlike hunting and furtaking licenses, are

4

not available at County Treasurer's offices and commercial issuing agents through the Pennsylvania Automated Licensing System ("PALS") because changes to PALS, a system administered by a contractor, are costly. The defendants noted that Barr's residence is located less than 35 miles from the Northeast Regional Office in Dallas, Pennsylvania, where he would be able to purchase a shooting range permit.

Barr submitted written opposition to the motion for summary judgment, arguing that the $30.00 fee was indeed high, and that the fee and application process sent the message that, "if you are not a hunter or a 'fur-taker,' even if you are a native of Pennsylvania, go away." (Response to Summary Judgment Motion, at ¶ 5.) He further argued that the defendants had no rational basis for refusing to accept cash, checks, and money orders, and for, in effect, denying licenses to individuals who do not own a computer. He did not specifically respond to the defendants' assertion that he could avoid buying his permit on-line by purchasing it in person at the Northeast Regional Office in Dallas, Pennsylvania.

The Magistrate Judge to whom the case was referred filed a Report and Recommendation, in which she recommended that summary judgment be granted to the defendants. Barr filed no Objections to the Magistrate Judge's report. In an order entered on February 6, 2014, the District Court adopted the Report and Recommendation, and granted summary judgment to the defendants.

Barr appeals. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment *de novo*. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is proper where the summary judgment record "shows that there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In addition, we are required to view the facts in the light most favorable to the non-moving party, and make all reasonable inferences in his favor. See Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Barr contends in his Informal Brief that the shooting range permit application process is aimed at "administrative convenience, as opposed to the convenience of the public, for whom … the … defendants exist to be of service." Appellant's Informal Brief, at 3. He contends that not everyone has access to a computer and the internet, and that the Game Commission is not authorized by state or federal law to demand that an applicant have these things before he can purchase a shooting range permit. Barr also reiterates his constitutional arguments and argues that the actions of the Game Commission in requiring a non-hunter/non-furtaker to obtain a permit to use the shooting range is an arbitrary exercise of the Commonwealth's power. In addition, Barr argues that he was denied discovery in the proceedings below. He asks that the defendants be ordered to "knock off the administrative nonsense" and accept personal checks or postal money orders and permit mail-in shooting range applications for those who are not hunters or furtakers. Appellant's Informal Brief, at 6.

6

We will affirm. Effective April 1, 2011, the Pennsylvania Game Commission enacted legislation requiring individuals wishing to use the Pennsylvania Game Land shooting range facilities to obtain a range use permit. The annual cost of the permit is $30.00. Those who already hold a current general hunting or furtaking license are exempt from paying the range use permit fee. In order to obtain a permit, an applicant must either visit the Pennsylvania Game Commission headquarters in Harrisburg, one of the six regional offices, or the Commission's website. In order to complete the purchase on the website, the applicant must have a credit or debit card.

Here, Barr did not claim that he is a member of a protected class, but rather that he is being treated differently than similarly situated individuals, that is, hunters and furtakers. Since Barr is not a member of a protected class, he must show that there is no rational basis for treating shooting range users differently from hunters and furtakers. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). Under the rational basis test "if the justification for the disparate treatment is neither arbitrary nor capricious, but grounded on some reasonable policy, there is no denial of equal protection of the laws." Jamieson v. Robinson, 641 F.2d 138, 142 (3d Cir. 1981). See also Sammon v. N.J. Bd. of Med. Examiners, 66 F.3d 639, 645 (3d Cir. 1995) (under rational basis review, statute withstands substantive due process challenge if state identifies legitimate state interest that the legislature could rationally conclude was served by the statute).

The material facts are undisputed. An annual shooting range permit costs $30.00, 58 Pa. Code § 147.1002 (2011), and is available for purchase through the Game Commission's website, at the Commission's Harrisburg headquarters, and at all six regional offices. A hunting or furtaking license for an adult resident costs $19.00, 34 Pa.

7

Cons. Stat. Ann. § 2709, and is more readily available for in-person purchase, but it requires that the licensee successfully complete Hunter-Trapper education, a course designed to educate licensees on safe hunting behavior, firearm equipment knowledge, outdoor safety, and basic shooting. Unlike shooting range permits, hunter and furtaker licenses are available at county treasurer's offices and from commercial issuing agents through PALS. Shooting range permits, in contrast, cost $30.00 and are not available through PALS but can be purchased any time of day or night on the Commission's website, if one has access to the internet and either a debit or credit card.

Summary judgment for the defendants was proper here because Barr did not demonstrate in opposing it that there is a triable issue with respect to whether the state action at issue here bears a rational relation to a legitimate governmental objective, Jamieson, 641 F.2d at 142. The summary judgment record establishes that the defendants' actions are rationally related to the legitimate government interests of property upkeep and firearm safety, and Barr presented no evidence and no persuasive argument demonstrating otherwise. In Baldwin v. Montana Fish & Game Comm'n, 436 U.S. 371 (1978), in rejecting an equal protection challenge to Montana's differential treatment of resident and nonresident elk hunters, the Supreme Court "perceived no duty on the State … to justify to the penny any cost differential it imposes in a purely recreational, noncommercial, nonlivelihood setting. Rationality is sufficient." Id. at 391. That rule of law applies here. The defendants' actions here "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Barr has not shown that the defendants' decision to set the fee

8

modestly higher for the shooting range permit for the purpose of upkeep and in order to encourage applicants to be better educated in hunting and shooting safety is irrational or arbitrary and capricious. Nor has he shown that the decision to limit the purchase of shooting range permits to the Game Commission's main and regional offices, and its website, in order to avoid the administrative cost of changes to PALS, is irrational or arbitrary and capricious. Barr has shown nothing more than that the application process for shooting range permits is less convenient than the process for obtaining a hunter or furtaker license for those who do not have access to the internet, or debit or credit cards, but that is insufficient to show that the fee application process is irrational. We note that Barr did not claim that he was not able to go to the regional office closest to his home to make the required purchase. In his Reply Brief, Barr appears to argue that the permit is only available on-line, Appellant's Reply Brief, at 1. Such an assertion is contradicted by the summary judgment record. Barr also appears to argue that recreational shooters are a suspect class warranting strict scrutiny of the fee and application process. This assertion that recreational shooters are a suspect class is not supported by case law, cf. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313 (1976) (per curiam) (suspect classes include those based on race and national origin because of a history of purposeful unequal treatment).

Last, Barr contends that his discovery motion was improperly deemed withdrawn. During discovery, Barr filed a motion to compel, asserting that the defendants' responses to several of his interrogatories were inadequate. The Magistrate Judge ordered Barr to file a brief in support of his motion within 14 days, as required by Local Rule 7.5. When Barr failed to file a brief, his motion to compel was deemed withdrawn. At the end of

9

discovery, Barr filed another motion to compel without a brief in support. The Magistrate Judge deemed this motion withdrawn for failure to file a brief in support. Because Barr failed to seek review of the Magistrate Judge's discovery orders from the District Court, we decline to consider his argument that his motion to compel was improperly deemed withdrawn. Absent consent of the parties to proceed before a Magistrate Judge, appeal of an order issued by a Magistrate Judge is to a District Judge. 28 U.S.C. § 636(b)(1) &(c)(1). A party who fails to appeal a Magistrate Judge's pretrial ruling to the District Court, see Fed. R. Civ. Pro. 72(a), waives review of that ruling by this Court absent "exceptional circumstances." Continental Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 254 (3d Cir. 1998). We find no exceptional circumstances here because Barr has not described or discussed the discovery he did not receive, and has not argued that the missing discovery prevented him from opposing the defendants' motion for summary judgment.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment in favor of the defendants.