OPINION OF THE COURT
Rudolph U. Johnson, J.
Following this court’s decision of December 9, 1981, notice to intervene was effected on the State Attorney-General who declined to participate at this present stage.
As noted in our earlier decision, defendant Rein challenges the constitutionality of subdivision 1 of section 926 of the Real Property Tax Law as violating the equal protection of the laws (NY Const, art I, § 11) for unreasonably discriminating between residents and nonresidents in its imposition of personal liability for real property tax.
Subdivision 1 of section 926 of the Real Property Tax Law reads: “The owner of real property, or of an interest therein, including the interest of a renter pursuant to section three hundred four of this chapter, if a resident of the city or town in which such property or interest therein is assessed and if his name is correctly entered on the roll, shall be personally liable for the taxes levied thereon.”
No such personal liability is placed against nonresidents and historical precedent holds that none could be. As explained by the Court of Appeals in Village of Massape *612 qua Park v Massapequa Park Villa Sites (278 NY 28, 30-31): “Personal liability for real estate taxes has been confined to those who are resident of the particular tax district for so long a time that it has become a part of the history of real estate taxation. The rule arose because tax assessors, while having supervision to tax lands situated within their tax district, possessed no jurisdiction to assess against the owner if a nonresident. Within the limits of this right to assess ‘* * * the ultimate tax levied by reason of the assessment is a charge against the person assessed, and is to be collected from his personal estate’ ”.
This distinction, defendant argues, is unjust and bears no reasonable relationship to the matter of liability for real estate taxes, or to the plaintiff’s ability to collect taxes. Defendant notes that when the 1958 Legislature re-enacted section 926 of the Real Property Tax Law (L 1958, ch 959), it also enacted section 304 of the Real Property Tax Law, which provides that assessments of tax shall be against the real property itself and thus removed the element of the tax assessor’s geographic jurisdiction. This shift from personal liability for the payment of real property tax to an in rem proceeding against the real property itself, defendant maintains, removed any rational justification for discriminating between municipal residents and nonresidents.
Coupling this legislation with the more recent extension of New York’s long-arm statute providing for the imposition of in personam jurisdiction over a non-State resident, based on the incident of real property ownership with the State (CPLR 302, subd [a], par 4 — which was itself an extension of the previously recognized jurisdictional basis of “doing business within the State”), defendant concludes that exempting nonresidents from personal liability is now anachronistic and deprives residents of the equal protection of the laws.
This contention, the court believes, is not entirely accurate and a more in-depth review is necessary.
The imposition of general fund taxes upon real property, while purely a legislative function, is historically founded on the public betterment and is justified by the direct *613 benefits received by the resident as well as the collateral benefits to the real property.
The orderly conduct of local governmental business in liquidating its financial responsibilities for the services provided and in letting anticipatory bonds and notes for community improvements required a sound and sure tax base.
Additionally, both the State and county governments levied taxes based on the local assessment and, as new public improvements were constructed, special assessments were also added for such services as lighting, sewers, water, hospitals and roadways. These taxes and special assessments were included in and collected through the local tax bill. The fair proportionment of taxes was accomplished through the device of real property valuation and subsequent tax levy proportioned against the amount of annual general funds being raised.
Thus, to insure the collection of the requisite funds, the resident owner was held primarily liable for the payment of the tax levy and the real property was collaterally subject to a tax sale. It was the direct governmental and societal benefits flowing to the resident owner which made him personally liable for the taxation.
On the other hand, nonresident owners presumably received no direct personal benefits and, therefore, personal tax liability was unfounded. The real property, however, did benefit and was required to bear its proportioned tax burden. If left unpaid by the nonresident owner, the taxing authorities were permitted a lien against the underlying property and, if they moved swiftly, could effect a tax foreclosure sale and, thereby, collect the funds originally anticipated. (See Barlow v Saint Nicholas Nat. Bank, 63 NY 399, 403, 404.)
Throughout the history of real property taxation, therefore, a distinction has-always been made between personal liability for local residential owners and in rem liability for nonresidential owners to the extent of the value of the real property.
For example, the method of assessing real property was prescribed by the Revised Statutes of New York (part I, ch XIII, tit II) as follows:
*614 “§ 1. Every person shall be assessed in the town or ward, where he resides when the assessment is made, for all lands then owned by him within such town or ward, and occupied by him, or wholly unoccupied.
“§ 2. Land owned by a person residing in the town or ward where the same is situated, but occupied by another person, may be assessed in the name of the owner, or occupant.
“§ 3. Unoccupied lands, not owned by a person residing in the ward or town where the same are situated, shall be denominated lands of non-residents,’ and shall be assessed as herein after provided.”
This statute, thus, defined the limits of the authority possessed by the assessment officers. Their jurisdiction depended solely upon the existence of the facts as stated in the statute, i.e., residency of the owner and not some declaration or assessment of the assessors. (See McLean v Jephson, 123 NY 142.)
Included in the rationale of the Legislature in distinguishing between the primary liability for resident owners and collateral liability only for nonresident owners was the due process concern of adequate notice and opportunity for review before the taxing.
As stated with particularity in Wheeler v Mills (40 Barb 644, 645-646): “By the 19th section of the act prescribing the manner in which assessments of taxes are to be made, (1 R.S. 393,) the assessors are directed to complete the assessment role on or before the time therein named and make a fair copy thereof, and leave the same with one of their number. They are then forthwith to cause notices thereof to be put up in three or more public places in their town or ward. These notices shall set forth that the assessment rolls are completed, and a copy thereof left with one of their number designated in the notices, at a place specified therein, where the same may be seen and examined by any of the inhabitants of the town or ward, during twenty days; and that the assessors will meet on a certain day, at the expiration of such twenty days, and at the time and place specified in such notice, to review their assessments, on the application of any person conceiving himself aggrieved. Section 21 provides that the roll, during the *615 twenty days, shall be submitted to the inspection of all persons who shall apply for that purpose; and sections 22 and 23 provide for a review and re-examination upon the application of tax-payers thinking themselves aggrieved, and for a reduction of the valuations and assessments, when they prove to be erroneous. These several provisions are designed to secure to the tax-payer the privilege of examination and hearing before the board of assessors, and of offering evidence before them of the condition and valuation of his property, before they shall by their certificate make such assessment final and conclusive to charge his estate with the payment of the tax to be apportioned thereon * * * This notice to the tax-payers, and the opportunity to examine the roll and to correct errors contained therein, is essential to the validity of the tax, because it is one of the things to be done by the assessors to obtain for them jurisdiction over the subject.”
Quite obviously, this notice was not reasonably contemplated to be received by the nonresident owner. While ordinary mailing has since replaced public posting, even today only, one grievance day per year is set aside for review of valuations and assessments and due process considerations for the nonresident remain unmet.
Lastly, we note that subdivision 1 of section 926 of the Real Property Tax Law does not distinguish, as suggested by defendant, between State and non-State residence for which long-arm in personam considerations are applicable but rather only between residents or nonresidents of the city or town in which the real property is situate.
For the past 150 years this legislative distinction has been brought forward with every re-enactment and amendment to the taxing laws of New York.
It is this court’s duty, whenever possible, to construe a statute so as to uphold its constitutionality and to apply a heavy burden upon the party attacking a legislative classification to negate every conceivable basis which might establish its rationality. (See Madden v Kentucky, 309 US 83; Lindsley v Natural Carbonic Gas Co., 220 US 61; Matter of Catapano Co. v New York City Fin. Admin., 40 NY2d 1074, opp dsmd 431 US 910.)
*616 Upon review of the arguments presented and the legislative history noted above, the court finds that the defendant Rein has not met his burden.
Defendant Rein’s motion to dismiss plaintiff City of Buffalo’s complaint is denied and defendant is directed to submit an order in conformance with this memorandum decision.