S05A1437. MORGAN COUNTY BOARD OF COMMISSIONERS et al. v. MEALOR.
(626 SE2d 79)

SEARS, Chief Justice.

Appellants, the Morgan County Board of Commissioners (the "County"), appeal from the Superior Court of Morgan County's order requiring the County to include the Appellee, Elaine Mealor, in the County's pension plan. Mealor, the former Superior Court Clerk for Morgan County, claimed that her exclusion from the County's pension plan denied her equal protection under the law. Because we find that the County has a rational basis for including certain employees within its pension plan and excluding others, like the Superior Court Clerk, we reverse.

The County participates in a pension plan, created in 1988 by the Association of County Commissioners of Georgia, that provides retirement benefits to County employees. The County, rather than the individual employees, contributes its own funds towards each employee's pension.

Initially, the County's constitutional officers, including the Superior Court Clerk, the Probate Judge, the Sheriff, and the Tax Commissioner, were not included in the County pension plan. These

constitutional officers were excluded because they have access to pension plans through the State's retirement system.

In 1989, the General Assembly passed a statute allowing, but not requiring, counties to include their constitutional officers within their pension plans.[1] In 1996, the County chose to include the Tax Commissioner within its plan because, at that time, the only other retirement plan that the Tax Commissioner could participate in was funded by her own personal funds and by funds contributed by the State, but included no funds contributed by the County. The County chose not to include the other constitutional officers within its retirement plan because those officers already participated in State plans that were funded in part by fines and fees collected by their respective County offices. Thus, the County concluded that unlike the Tax Commissioner's retirement plan, the other constitutional officers' retirement plans were already funded or supplemented by County funds.

Mealor began serving as the Superior Court Clerk in 1981. She submitted requests to be included within the County's pension plan in 1990 and 2002, but those requests were denied. In 2004, shortly before her retirement, Mealor filed this action seeking a writ of mandamus to compel the County to include her within its pension plan, retroactive to her starting date as the Superior Court Clerk.

Mealor claimed that her exclusion from the County retirement plan deprived her of equal protection because the County lacked a rational basis for its different treatment of the constitutional officers. The County argued that it excluded the Superior Court Clerk from its pension plan because it was already contributing County funds, certain fines and fees collected by the County Superior Court, to the Clerk's state retirement plan. The trial court concluded that the court fines and fees earmarked for the Superior Court Clerk's pension plan did not qualify as County funds, and thus that the County was not contributing to the Superior Court Clerk's retirement plan and had no rational basis for failing to do so. Accordingly, it granted Mealor a writ of mandamus compelling the County to retroactively include her within its pension plan. We reverse.

1. Mealor's pension as Superior Court Clerk is funded in part by a portion of every fine and forfeiture collected by the Morgan County Superior Court for the violation of a state law.[2] The trial court concluded that the funds collected by the Superior Court and transferred to the Clerk's pension plan did not qualify as County funds

---

[1] OCGA § 36-1-11.1.

[2] OCGA § 47-14-50 (a) (providing that a portion of every fine collected for a violation of state law collected in the Superior Court is paid to the Clerk's retirement plan).

because the legislature had specifically mandated that those funds be contributed to the pension plan. We disagree.

OCGA § 15-21-2 (a) provides that "the clerks of the several courts shall pay into the county treasury of the county where the court is held all moneys arising from the fines and forfeitures collected by them." Thus, the legislature has clearly determined that court fines and forfeitures are indeed County funds. The statutory directive requiring a portion of those funds to be contributed to the Clerk's retirement plan does not render that portion non-County funds, but merely eliminates the County's discretion with respect to those funds.[3] The legislature has ordered the County to contribute a portion of its court fines and fees to fund the retirement plans for the Superior Court Clerk,[4] the Sheriff,[5] and the Probate Judge.[6] It has not imposed that requirement upon the County for the Tax Commissioner.

2. Under the equal protection clauses of the United States and Georgia Constitutions, the government is required to treat "similarly situated individuals in a similar manner."[7] Where a "suspect class" or "fundamental right" is not involved, however, a legislative classification scheme need only survive the "rational basis" test.[8] That is, the State may create different classifications " 'when the classification is based on rational distinctions and . . . bears a direct and real relation to the (legitimate) object or purpose of the legislation.' "[9] Thus, the County's classification system in this case is proper if the County's decision to exclude some employees from the pension plan is "reasonable and not arbitrary, and rest[s] upon some ground of difference having a fair and rational relationship to the legislation's [legitimate] objective."[10]

---

[3] Although this opinion recognizes that the County is entitled to credit for the court-generated funds contributed to the Clerk's retirement plan, we note that the County has no authority to put those funds to any other use. In an amicus brief, the Superior Court Clerk's Association claims that our holding might encourage County Commissioners to attempt to exercise control over court-generated funds that are held specifically for certain uses. Our opinion does not, however, authorize counties to override statutory mandates with respect to those funds. See, e.g., OCGA §§ 47-17-60; 47-14-50; 47-16-60; 36-15-9; 15-21-73; 15-21-93. Only after all legislative directives have been satisfied should the remaining funds be turned over to the county treasury. See OCGA §§ 15-21-2 (b); 15-6-95.

[4] OCGA § 47-14-50 (a).

[5] OCGA § 47-16-60 (a) (providing for the funding of the Sheriff's retirement plan from court fees).

[6] OCGA § 47-11-50 (a) (providing for the funding of the Probate Judge's retirement plan from court fees).

[7] *City of Atlanta v. Watson*, 267 Ga. 185, 187 (475 SE2d 896) (1996).

[8] Id.

[9] Id., quoting *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599, 600 (300 SE2d 139) (1983).

[10] Id. at 187-188.

In this case, the reason for the County's decision to include the Tax Commissioner within its pension plan, while excluding the other constitutional officers, is plain and reasonable. The County has quite rationally decided that it should contribute to each constitutional officer's retirement plan, but that it should only do so once. Thus, it chose to include the Tax Commissioner within its pension plan because the Tax Commissioner's State plan is funded without any contribution from the County, while the other constitutional officers' retirement plans are all funded in part by County fines and fees. The County's decision was based on a rational distinction between the various constitutional officers, and furthers the legitimate governmental purpose of equalizing the County's pension contributions and fostering financial responsibility in the funding of its employees' retirement plans.[11]

Mealor argues that the County's distinction is invalid because some of the County's ad valorem tax funds turned over to the State are probably used to fund the Tax Commissioner's retirement plan, thus showing that the County "contributes to" the Tax Commissioner's pension twice. Under OCGA § 47-2-292, the Tax Commissioner's retirement plan is funded by the State Department of Revenue from the State's general fund, which is comprised of funds from numerous sources other than just Morgan County.

Contrary to Mealor's argument, the State Department of Revenue's general fund constitutes "State funds." Unlike the court fines and fees directed to the Superior Court Clerk's pension plan, the County's ad valorem tax contributions to the State's general fund are not earmarked for the Tax Commissioner's pension plan. The County's contribution to the Department of Revenue's general fund is statistically insignificant, relative to the entire fund, and the entire general fund qualifies as "State funds" rather than "County funds." Furthermore, where the " 'classification has some "reasonable basis," it does not violate equal protection merely because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' "[12]

Because we find that the County had a rational basis for its decision to include the Tax Commissioner within its pension plan

---

[11] See also *Sears v. Dickerson*, 278 Ga. 900 (607 SE2d 562) (2005) (finding that the county had a rational purpose in requiring all Assistant Chief Appraisers to obtain certification as real estate appraisers).

[12] *State Farm Mut. Auto. Ins. Co. v. Five Transp. Co.*, 246 Ga. 447, 450-451 (271 SE2d 844) (1980), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 78 (31 SC 337, 55 LE 369) (1911).

while excluding the Superior Court Clerk, we reverse the trial court's order requiring the County to include Mealor within the County's pension plan.

*Judgment reversed. Hunstein, P. J., Benham, Carley, Hines and Melton, JJ., and Judge Michael E. Hancock concur. Thompson, J., not participating.*

DECIDED JANUARY 17, 2006 —
RECONSIDERATION DENIED FEBRUARY 27, 2006.

*Christian G. Henry*, for appellants.
*Brenda H. Trammell*, for appellee.
*Walker, Hubert, Gray, Byrd & Christy, Charles W. Byrd, Steven E. Scheer, Tucker, Everitt, Long, Brewton & Lanier, John B. Long*, amici curiae.